ALLEGHENY COUNTY SANITARY AU-
THORITY, Bangor Borough Authority,
Hampton Township Sanitary Authority,
Township of Horsham Sewer Authority,
Municipality of Penn Hills, South Stra-
bane Township Sanitary Authority,
York Township Water and Sewer Au-
thority, Wyoming Valley Sanitary Au-
thority, York City Sewer Authority,
Township of South Fayette, Dover
Township Sewer Authority, Borough of
Littlestown, Township of Peters and
Peters Township Municipal Authority,
St. Thomas Township Municipal Au-
thority, Plaintiff Intervenors,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY (EPA), Ann
Gorsuch, EPA Administrator, Peter
Bibko, Regional Administrator for EPA
Region III, Greene A. Jones, Director,
Water Division, EPA Region III, Jo-
seph Galda, Chief of the Pennsylvania-
West Virginia Branch, Water Program
Division of EPA Region III, The Penn-
sylvania Department of Environmental
Resources, (DER), Peter Duncan, Sec-
retary of DER, Richard M. Boardman,
Associate Deputy Secretary, Office of
Environmental Management, DER,
Daniel B. Brawbaugh, Chief, Division
of Municipal Facilities and Grants, Bu-
reau of Water Quality Management,
DER, Anthony Maisano, Chief, Admin-
istrative Sections Bureau of Water
Quality Management, DER, and Timo-
thy V. Dreier, Chief, Southwestern Re-
gional Grants Section, Bureau of Water
Quality Management, DER, Common-
wealth of Pennsylvania, Legislative
Reference Bureau, Fry Communica-
tions, and Pennsylvania Department of
General Services, Borough of Galeton
and Galeton Borough Authority, Har-
risburg Sewerage Authority, City of
Lancater Sewer Authority, City of Phil-
adelphia, Borough of Hanover, Lime-
rich Township Municipal Authority,
Defendant Intervenors,

Appeal of ALLEGHENY COUNTY
SANITARY AUTHORITY, in Nos.
83–5338; 83–5345.

Appeal of TOWNSHIP OF SOUTH FA-
YETTE, in Nos. 83–5429; 83–5430.

Nos. 83–5338, 83–5345, 83–5429
and 83–5430.

United States Court of Appeals,
Third Circuit.

Argued Jan. 26, 1984.

Decided April 20, 1984.

As Amended May 20, 1984.

Robert P. Casey (argued), Thomas I. Vanaski, Dilworth, Paxson, Kalish & Kauffman, Scranton, Pa., F. Regan Nerone, Pittsburgh, Pa., for appellant Allegheny County Sanitary Authority.

J. Carol Williams (argued), Martin W. Matzen, Dean K. Dunsmore, F. Henry Habicht, U.S. Dept. of Justice, Washington, D.C., for appellees U.S. EPA; A. James Barnes, Acting Gen. Counsel, Sylvia Horwitz, U.S. EPA, Washington, D.C., John D. Cooper, U.S. EPA, Philadelphia, Pa., of counsel.

Raymond L. Hovis, Stock & Leader, York, Pa., for plaintiff intervenor York Tp. Water and Sewer Authority.

Edward Rubin, Hamburg, Rubin, Mullin & Maxwell, Landsdale, Pa., for plaintiff intervenor Tp. of Horsham Sewer Authority.

James J. Kutz (argued), Allen C. Warshaw, Deputy Attys. Gen., LeRoy S. Zimmerman, Atty. Gen., Robert Alder, Maxine Woelfling, Asst. Attys. Gen., Dept. of Environmental Resources, Harrisburg, Pa., for appellee Pennsylvania Dept. of Environmental Resources.

David William Bupp, Blakey, Yost, Bupp & Kilgore, York, Pa., for plaintiff intervenor York City Sewer Authority.

August C. Damian, Damian & DeLuca, Pittsburgh, Pa., for plaintiff intervenor Municipality of Penn Hills.

John C. Sullivan, Craig J. Staudenmaier, Nauman, Smith, Shissler & Hall, Harrisburg, Pa., for appellee Harrisburg Sewerage Authority.

Timothy P. O'Reilly, McArdle, Caroselli, Spagnolli & Beachler, Pittsburgh, Pa., for plaintiff intervenor South Fayette Tp.

Marguerite R. Goodman, John J. DiBernardi, Jr., City of Philadelphia, Law Dept., Philadelphia, Pa., for defendant intervenor City of Philadelphia.

Robert H. Long, Jr., David F. O'Leary, Rhoads, Sinon & Hendershot, Harrisburg, Pa., for Borough of Galeton, City of Lancaster Sewer Authority, St. Thomas Tp. Mun. Authority, Tp. of Peters, Peters Tp. Mun. Authority, Limerich Tp. Mun. Authority.

Michael D. Bull, Blakinger, Grove & Chillas, P.C., Lancaster, Pa., for defendant intervenor City of Lancaster Sewer Authority.

Before HUNTER and WEIS, Circuit Judges, and GERRY, District Judge.[*]

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal we determine that a state agency and its officials may not be sued in federal court on alleged violations of state law and that no federal right of action against those defendants was created by

[*] The Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

the Water Pollution Control Act. We also conclude that the Act preempts the claim made by the plaintiff against the federal Environmental Protection Agency under the Administrative Procedure Act. Consequently, we affirm the district court's dismissal of all counts against the state defendants and one count against the federal defendants.

The Allegheny County Sanitary Authority (ALCOSAN) brought suit contesting its failure to receive funding under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1376 (1976 & Supp. V 1981). ALCOSAN sought injunctive and declaratory relief against the state and federal environmental agencies as well as officials of each agency. The district court, 557 F.Supp. 419, granted a temporary restraining order, and then considered motions by all defendants to dismiss the various counts against them. After other sewage authorities intervened, the court dismissed all claims against the state defendants and one of the counts asserted against the federal parties. The plaintiff's request for a preliminary injunction was denied. Plaintiff appeals the denial of the preliminary injunction, and, pursuant to a Rule 54(b) certification, bring the dismissals to this court as well.

Plaintiff ALCOSAN is a municipal sewage authority organized under Pennsylvania law, and provides wastewater treatment for approximately 1.2 million persons in western Pennsylvania. Defendant Department of Environmental Resources (DER) is a Pennsylvania agency that administers the state's participation in the federal grant program for the construction of sewage treatment facilities by public authorities. Funding for the program is authorized by Title II of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1282–1299 (1976 & Supp. V 1981), and is allocated to the states for distribution according to their individual disbursement methods.

In Pennsylvania, several criteria have been used to determine eligibility for the funds. Among these is the "Priority Point Score", which is based on the effectiveness of the proposed facility, the importance of the stream affected, and the population served. 25 Pa.Code § 103.6. Also considered is the project's "Target Certification Date", which is determined on the basis of readiness to proceed with construction and availability of funds. A project with an earlier certification date is given priority over a facility having a higher point score. *See* 25 Pa.Code § 103.5(e). Projects are characterized on an annual list as "fundable," those expected to receive funding in a particular year, and "planning," those anticipated to receive funds in later years. 25 Pa.Code § 103.5(c).

Using these guidelines, the state DER drafts a "preliminary priority list," conducts a public hearing, and then prepares a "final project priority list," which is submitted to the federal Environmental Protection Agency (EPA) for approval. 25 Pa. Code § 103.5(b).

ALCOSAN had proposed a treatment facility project that appeared on Pennsylvania's fiscal year 1981 final priority list. At the time that list was prepared, projects were being funded in three steps: 1) facilities planning study; 2) preparation of specifications and design drawings; and 3) actual construction. The 1981 list designated ALCOSAN's project as "fundable" for Step 2 and "planning" for Step 3.[1] It was anticipated that ALCOSAN would be ready to proceed with construction in 1982.

Congressional action on sewage project construction funds for fiscal 1982 was delayed, and not until July 19, 1982 were appropriations made. Consequently, EPA granted states permission to use their 1981 priority lists through October 1, 1982.

In mid-1982, the state DER transferred a number of projects from "planning" to "fundable" status, and submitted to EPA

---

**1.** In 1981, Congress amended the Water Pollution Control Act to eliminate funding for Steps 1 and 2. *See* Pub.L. 97–117, 95 Stat. 1630. ALCOSAN had not been finally approved for a Step 2 grant at the time the 1981 amendments became effective and, therefore, never received the funding.

an "Expanded FY 1981 Project Priority List." DER determined that public hearings on the transfers were unnecessary because the projects that appeared on the "planning" portion of the 1981 list had been the subject of earlier hearings.

The construction phase of ALCOSAN's project was not promoted to "fundable" status because the target certification date was changed by DER from 1982 to 1985. Because the change was made without holding hearings or consulting ALCOSAN, DER did not realize that ALCOSAN was prepared to immediately proceed with construction.

The failure to include ALCOSAN as a fundable project in the expanded 1981 list also resulted in its exclusion from a "carryover" category on the 1983 list. ALCOSAN contends that these events caused it to be denied funding that it should have received.

In addition to the detriment it suffered, ALCOSAN protested the favored treatment DER allegedly extended Philadelphia by granting its projects "segmented status." This arrangement permits construction of a facility to be funded in stages over more than one fiscal year. *See* 25 Pa.Code § 103.13(d). According to ALCOSAN, however, Philadelphia has not provided the required assurances that the projects would be completed even in the absence of federal funds. *See* 40 C.F.R. § 35.2108(a) (1983). In this instance, also, no public hearings were held.

Moreover, ALCOSAN contends that the state DER failed to amend its priority list in light of the 1981 amendments to the Water Pollution Control Act. Although EPA's regulation originally required states to revise their priority systems to conform with the amendments, *see* 40 C.F.R. § 35.-2015(e)(1), an internal memo later stated that revisions need be made only if necessary. DER concluded that no revisions to the Pennsylvania priority system were required, and EPA approved this determination. Again, ALCOSAN charges that DER came to its decision without holding a public hearing as specified in EPA regulations, *see* 40 C.F.R. § 35.2015(d)(1).

ALCOSAN contended that DER violated state law in determining priority ratings on the basis of unpublished regulations, and violated other state regulations by failing to make certain record determinations. In counts under 42 U.S.C. § 1983, plaintiff asserted that DER also violated federal law—the Water Pollution Control Act—in failing to hold public hearings, in not revising its priority system after the 1981 amendments, and in awarding "segmented status" to Philadelphia projects.

ALCOSAN has filed an appeal with the Pennsylvania Environmental Hearing Board as result of the denial of its funding status. No determination had been made in that forum at the time of the district court's decision in this case.

As to the federal defendants, plaintiff contends that, by approving the Pennsylvania plan, EPA failed to perform its nondiscretionary duty to disapprove a non-complying priority list. EPA was also alleged to have acted arbitrarily and capriciously, and in violation of the due process and equal protection clauses.

In dismissing the claims against the state defendants, the district court reasoned that the Federal Water Pollution Control Act provided a remedy only against the administrator of the EPA. Because the provisions of the Act were comprehensive, any other remedy, including one under section 1983, was precluded. Therefore, the court concluded that ALCOSAN could not assert a cause of action against the state.

In reviewing the claims against the federal defendants, the court found that the notice requirement of section 505(b)(2) of the Act, 33 U.S.C. § 1365(b)(2), had been met by ALCOSAN's correspondence with the EPA. Therefore, ALCOSAN had stated a claim under the statute against the EPA administrator for the alleged failure to perform a non-discretionary duty. *See id.* § 1365(a)(2). The count under the Administrative Procedure Act was dismissed, however, because the court concluded the

remedy under the Water Pollution Control Act was exclusive.

While the defendants' motions to dismiss were under advisement, ALCOSAN tendered an amended complaint. The district court ordered the amended complaint stricken, but observed that it would not require a different ruling. 557 F.Supp. at 428.

In sum, all of the counts against the state defendants were dismissed, as was the one under the Administrative Procedure Act against the EPA and its officials. Remaining for adjudication were the claims under the United States Constitution and the Water Pollution Control Act against the federal defendants.

Finding little likelihood of the plaintiff's ultimate success on the merits, the court denied a preliminary injunction. After plaintiff appealed that order, the court certified under Fed.R.Civ.P. 54(b) that there was no just cause for delay and entered judgment in favor of the state defendants on all claims and in favor of the federal defendants on the Administrative Procedure Act count.

## I.

Preliminarily, a question of appellate jurisdiction must be discussed. The order of the district court dismissing all claims against the state defendants left nothing to be resolved as to those parties. Hence, the provision of Fed.R.Civ.P. 54(b) allowing certification of "a final judgment as to one but fewer than all of the ... parties" has been met as to the state agency and officials.

The situation as to the federal defendants, however, is different because counts against them are still pending in the district court. The Rule 54(b) certification of the dismissal of the APA count against the federal defendants rests on the part of the rule that permits an appeal from the entry of "final judgment as to one or more but fewer than all of the claims" against a party. The issue that has surfaced is whether the various allegations against the federal defendants are multiple claims or merely alternative legal theories supporting a single claim.

If there are in fact multiple claims against the federal defendants, then the Rule 54(b) certification confers jurisdiction on this court. However, a plaintiff who "presents a number of alternative legal theories, but whose recovery is limited to only one of them, has only a single claim." *Page v. Preisser,* 585 F.2d 336, 339 (8th Cir.1978). Rule 54(b) does not apply to a single claim action. *Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 743, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976). "The threshold issue, therefore, is whether the order appealed from finally resolved at least one entire claim, leaving at least one separate claim unresolved." *Bogosian v. Gulf Oil Corporation,* 561 F.2d 434, 440 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). *See also Matter of Bassak,* 705 F.2d 234, 237 (7th Cir.1983); 10 C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2657 (1983).

There is no definitive test to determine whether more than one claim is before the court. In *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956), the Supreme Court spoke in terms of claims that were "inherently inseparable from," "closely related to," or "sufficiently independent of" those in other counts. This is not a particularly precise standard. In *RePass v. Vreeland,* 357 F.2d 801, 805 (3d Cir.1966), we noted the "difficulty of providing simple criteria to resolve this onerous problem." In that case we held that preclusion of recovery on one item of damages under a claim of negligence did not constitute a certifiable order.

The case at hand, however, has a number of elements that lead us to conclude we are faced with only one claim, supported by several theories. All counts against the federal defendants are based on the same factual situation—EPA's approval of Pennsylvania's "priority system." In addition, each seeks a declaration that the plaintiff's right to federal funding has

been violated and asks for injunctive relief to remedy that loss. There is no indication that the nature of an injunction would differ depending on which count ALCOSAN proved. Nor would the relief differ if ALCOSAN were successful on one or all of them.

Taken in combination, these circumstances convince us that ALCOSAN's counts against the federal defendants are not separate claims, but really one. Consequently, the Rule 54(b) certification in this respect was granted in error and does not confer jurisdiction on this court.

■ There is, however, an alternative basis of jurisdiction. In addition to appealing the dismissal of certain counts, ALCOSAN has asked that we review the denial of a preliminary injunction under 28 U.S.C. § 1292(a)(1). *Kershner v. Mazurkiewicz,* 670 F.2d 440 (3d Cir.1982) (*in banc*), holds that if the preliminary injunction issue cannot be resolved without reference to otherwise nonappealable issues, then both issues must be addressed. That is the situation here.

In order to prevail on a request for a preliminary injunction, the plaintiff must demonstrate a likelihood of ultimate success on the merits. In this case, resolution of that matter depends to some extent on the correctness of the district court's dismissal of the APA count against the federal defendants. In ruling on the preliminary injunction, the court did not consider the likelihood of success on the APA count because it had been dismissed. Therefore, if the court erred in that respect, the denial of the preliminary injunction might be

called into question. Because it is not possible to separate the issue, we conclude that we have appellate jurisdiction as to the APA claim against the federal defendants.

## II.

We first address the district court's dismissal of all counts against the state agency and officials. The plaintiff's claims against the state defendants rest on two grounds—state law and a federal statute.[2] The district court, after dismissing the federal law counts, declined to exercise pendent jurisdiction over the state law claims. 557 F.Supp. at 425. We find that the state law claims were properly dismissed, but base our determination on the Eleventh Amendment.

■ After the district court's ruling in this case, the Supreme Court decided *Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*Pennhurst II*). In that case, the Court concluded that a "federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when ... the relief sought ... has an impact directly on the State itself." *Id.* at ——, 104 S.Ct. at 917. That jurisdiction exists as to other claims in the case is inconsequential—the principle applies as well to state law counts brought into federal court under pendent jurisdiction. *Id.* at ——, 104 S.Ct. at 916–20. A federal court, therefore, must examine each claim in a case to determine whether jurisdiction over that claim is barred by the Eleventh Amendment.[3]

**2.** ALCOSAN's initial complaint also alleged that the state defendants had violated the due process and equal protection clauses of the federal Constitution, asserting an action under 42 U.S.C. § 1983. The district court dismissed this count on the ground that ALCOSAN, as a municipal authority, "has no rights under the Constitution which it may invoke in opposition to the will of its creator." 557 F.Supp. at 423 (*citing Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933)). On appeal, ALCOSAN raises no challenge to the district court's ruling on this issue and we note that the amended complaint, although stricken,

withdrew all constitutional claims against the state defendants.

**3.** At oral argument, we questioned whether ALCOSAN had the capacity to sue the state in federal court apart from any problems under the Eleventh Amendment. However, under the Municipal Authorities Act of 1945, PA.STAT. ANN. tit. 53, § 306(B)(b), the plaintiff Authority is granted the power "to sue and be sued, implead and be impleaded, complain and defend in all courts." It would appear therefore that the statute, not having any limitations, confers capacity on ALCOSAN to sue the state and federal defendants named in this suit. *See Rogers*

In the case at hand the claims against the state defendants under state law may not be heard in federal court. *Pennhurst II* held that the Eleventh Amendment barrier to suits against the state or its agencies cannot be overcome by suing the officials or seeking only prospective relief because the theories of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), "are inapplicable in a suit against state officials on the basis of state law." — U.S. at —, 104 S.Ct. at 911. Moreover, nothing in the record in this case presents any basis for finding that the state officials acted *ultra vires* —that is, that they were acting "without any authority whatever," *Pennhurst II*, — U.S. at — n. 11, 104 S.Ct. at 908 n. 11 (*quoting Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) (opinion of Stevens, J.)). Accordingly, we find that ALCO-SAN's state law claims are barred by the Eleventh Amendment.

The federal law count against the state defendants rests on the Federal Water Pollution Control Act. Essentially, ALCOSAN contends that the state defendants violated the Act by improper administration of the grant program. The district court concluded that the Act does not authorize suits against state agencies in connection with their administration, that no cause of action could be implied in the Act, and that an action under 42 U.S.C. § 1983 was precluded.

The court relied on *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), which found that the Act itself provides a comprehensive plan of enforcement. The statute authorizes "citizen suits" against the federal administrator and polluters, *see* 33

U.S.C. § 1365(a) (1976), but in the district court's view not against the state defendants named here.

*Pennhurst II* did not address whether the Eleventh Amendment bars suits against state officials in federal court when the claims are based on federal statutory law. *See* — U.S. at — n. 13, 104 S.Ct. at 910 n. 13. Nevertheless, it is clear that suits against the state itself, when brought by a party other than the United States, come within the ban of the amendment. *See Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684, 102 S.Ct. 3304, 3314, 73 L.Ed.2d 1057 (1982); *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

The Supreme Court has held, however, that a state official who acts in derogation of the federal Constitution is subject to federal court injunctions enjoining such activity. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Similarly, when federal statutory law has been violated, federal courts may grant an injunction for prospective relief against state officials, but not a decree granting retroactive monetary relief. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Thus, the state DER, an agency of the state itself, may not be sued in the federal court on allegations of federal law violations. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). However, the Eleventh Amendment is not a bar to all prospective relief against the state officials if violations of federal law are established.[4] Therefore, we must determine if plaintiff has such a cause of action against the state officials.

The district court held that ALCOSAN did not have a federal cause of action

---

*v. Brockette*, 588 F.2d 1057, 1067–70 (5th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979).

**4.** As *Pennhurst II* cautioned, "the scope of any such relief would be constrained by principles of comity and federalism." — U.S. at — n. 13,

104 S.Ct. at 910 n. 13. It is also important to note that the Water Pollution Control Act provides that "the determination of ... priority ... shall be made solely by that State." 33 U.S.C. § 1296 (Supp. V 1981).

against the state defendants because of the holding in *Sea Clammers*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In that case, the Supreme Court canvassed the provisions of the Water Pollution Control Act, noting that they included "unusually elaborate enforcement provisions, conferring authority to sue for this purpose both in government officials and private citizens." 453 U.S. at 13, 101 S.Ct. at 2623. Because of these provisions, the Court was "compelled to conclude that Congress provided precisely the remedies it considered appropriate," *id.* at 15, 101 S.Ct. at 2624, and that "private remedies in addition to those expressly provided should not be implied," *id.* at 18, 101 S.Ct. at 2625. The Court further held that Congress intended to supplant any other remedy otherwise available under section 1983. *Id.* at 19–21, 101 S.Ct. at 2625–2627.

■ Our inquiry, therefore, must look to the remedies provided by the Water Pollution Control Act. It provides that suits may be maintained by government officials as well as by private citizens. As a "person ... having an interest which is or may be adversely affected," 33 U.S.C. § 1365(g), ALCOSAN would qualify as an eligible plaintiff.[5] However, defendants are limited by the Act to (1) those who violate an effluent standard or an order issued with respect to such a standard, and (2) the federal administrator for the failure to perform non-discretionary acts or duties. 33 U.S.C. § 1365(a).

The state defendants fall under neither of these categories, and therefore the statute has not granted ALCOSAN an express right of action against these parties. Conceding that fact, ALCOSAN argues that the absence of an express remedy requires that one be implied. But the unequivocal language in *Sea Clammers* precludes such a holding. The Supreme Court was em-

phatic in saying that "where, as here, Congress has made clear that implied private actions are not contemplated, the courts are not authorized to ignore this legislative judgment." 453 U.S. at 18, 101 S.Ct. at 2625.

Moreover, in *sua sponte* passing on the possibility of a section 1983 action under *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the *Sea Clammers* opinion again noted the Water Pollution Control Act's "quite comprehensive enforcement mechanism." Then followed the statement: "It is hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies, including the two citizen-suit provisions." 453 U.S. at 20, 101 S.Ct. at 2626 (footnote omitted).

ALCOSAN attempts to distinguish *Sea Clammers* by pointing out that the plaintiff in that case initially had an express cause of action that it had forfeited by failing to comply with the notice requirement of the Act. *See* 453 U.S. at 6–7, 101 S.Ct. at 2619–2620. By contrast, ALCOSAN says it never had an action under the statute against the state defendants and therefore the Act's "comprehensive enforcement scheme" did not come into play.

We do not read *Sea Clammers* as narrowly as ALCOSAN because the tone of the opinion does not support that approach. After a thorough review of the Act and its legislative history, the Supreme Court concluded that, in enacting the Water Pollution Control Act, "Congress provided precisely the remedies it considered appropriate" for enforcement of the Act. 453 U.S. at 15, 101 S.Ct. at 2623. We must respect that congressional determination and, therefore, decline ALCOSAN's invitation to, in essence, supplement the Act's remedies through judicial recognition of an action not provided by the statute.[6] Because AL-

5. The EPA asserts in its brief that ALCOSAN has no standing because it lacks an interest affected by the actions of which it complains. Based on the allegations in the plaintiff's complaint, ALCOSAN makes at least a colorable argument

that it has been adversely affected by the administrative actions it challenges.

6. The "saving clause" of the Water Pollution Control Act, which provides that "[n]othing in this section shall restrict any right ... under any statute ... to seek any other relief," 33

COSAN cannot direct us to any indicia of a contrary congressional intent, we are compelled to conclude that the action under 42 U.S.C. § 1983 is precluded.[7] *See Chesapeake Bay Foundation, Inc. v. Virginia State Water Control Board,* 501 F.Supp. 821 (E.D.Va.1980) (cited in *Sea Clammers,* 453 U.S. at 21, 101 S.Ct. at 2627).

ALCOSAN is not left without avenues of redress. As noted above, it has a right of action against the federal administrator to enforce his duty to perform a non-discretionary act. It may be—and we take no position on the issue at this time—that through this route the EPA could require the state agency to remedy any procedural deficiencies. *See Love v. New York State Department of Environmental Conservation,* 529 F.Supp. 832, 840 (S.D.N.Y.1981). More important, ALCOSAN's state remedies have not been restricted and, in fact, proceedings have been commenced before Pennsylvania's Environmental Hearing Board.

The state Board is empowered "to hold hearings and adjudications ... on any order, license or decision of the Department of Environmental Resources." PA.STAT. ANN. tit 71 § 510–21 (Purd. Supp.1983). Final orders of the Environmental Hearing Board may be appealed to the Commonwealth Court, an intermediate appellate court. 42 PA.CONS.STAT. § 763(a) (Purd. 1981).

We conclude that the district court properly dismissed the claims against the state defendants.

### III.

We next consider the dismissal of the claim against the federal defendants based on the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976). That statute provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. As the district court noted, the APA does not confer "authority to grant relief if any other statute that grants consent to suit expressly or implicitly forbids the relief which is sought." 5 U.S.C. § 702. In light of *Sea Clammers,* the court ruled that the APA claim was foreclosed by the Water Pollution Control Act. 557 F.Supp. at 427–28.

ALCOSAN's APA claim is somewhat vague. Count 10 of the complaint alleges that the federal defendants failed to perform a mandatory duty. Count 11, however, takes the position that the federal defendants acted in a "arbitrary and capricious manner," but does not state whether they violated a discretionary or nondiscretionary duty.

We think that a fair reading of the district court's opinion is that it treated ALCOSAN's APA claim as being limited to the failure of the federal defendants to perform mandatory duties. We proceed on that basis, and do not pass on the validity of a claim based on discretionary actions that might be found arbitrary, capricious, or an abuse of discretion—the standard of review set out in 5 U.S.C. § 706(2)(A).[8]

---

U.S.C. § 1365(e), is of no aid to plaintiff. In *Sea Clammers,* the Supreme Court construed the clause to be inapplicable to a suit for redress of a violation of the Act itself, "regardless of the source of the right of action asserted." 453 U.S. at 20 n. 31, 101 S.Ct. at 2626 n. 31.

**7.** Because we find ALCOSAN's section 1983 action foreclosed by the existence of the comprehensive enforcement scheme in the Water Pollution Control Act, we do not address the application of a second exception to suit under section 1983 for statutory violations: "whether the statute at issue [is] the kind that created enforceable 'rights' under § 1983." *Sea Clammers,* 453 U.S. at 19, 101 S.Ct. at 2626; *see also Pennhurst*

*State School and Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981) (*Pennhurst I*).

**8.** In its brief the EPA concedes that APA review is appropriate for review of final agency actions under the Water Pollution Control Act that involve the exercise of discretion and for which the Act provides no other remedy.

In *Cape May Greene v. Warren,* 698 F.2d 179 (3d Cir.1983), action taken by the EPA pursuant to the Water Pollution Control Act was found to be arbitrary and capricious under the Administrative Procedure Act. There, however, it was alleged that the agency action contravened, not the Water Pollution Control Act, but other stat-

As noted earlier, the Water Pollution Control Act provides specifically for a citizen-suit against the federal administrator "where there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). Thus, the APA action asserted by ALCOSAN duplicates the remedy expressly conferred by the Water Pollution Control Act.

However, the Act contains several provisions specifically tailored to the needs of enforcement against water pollution. Section 505(b)(2) sets out a requirement of notice to the Administrator and prohibits the filing of a suit until sixty days after notice is given. 33 U.S.C. § 1365(b)(2). The notice requirement reflects the intent of Congress to allow the EPA to react to citizen complaints before suit is filed and prevent unnecessary litigation. That aim is frustrated if a citizen complainant may by-pass the notice requirement by resorting to the APA remedy for conduct already reviewable under the citizen-suit provision. *See City of Highland Park v. Train*, 519 F.2d 681, 690 (7th Cir.1975), *cert. denied*, 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976). *Cf. Natural Resources Council, Inc. v. Train*, 510 F.2d 692, 698 (D.C.Cir. 1975).

The Water Pollution Control Act provides an adequate remedy for plaintiff in the circumstances here. Consequently, the APA proviso in 5 U.S.C. § 704, providing for judicial review when no other adequate remedy in a court is available, has no application. On this record, the relegation of plaintiff to the citizen-suit provided by the Water Pollution Control Act and preclusion of the APA remedy is proper. We conclude, therefore, that the district court properly ruled that plaintiff did not have a remedy under the APA.

## IV.

There remains for consideration ALCO-SAN's contention that the district court should have granted a preliminary injunction. Citing *Constructors Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 814–815 (3d Cir.1978), the court considered four factors: (1) reasonable probability of eventual success on the merits; (2) irreparable injury to plaintiff if relief is not granted; (3) possibility of harm to other interested parties; and (4) the public interest.

In reviewing the denial of a preliminary injunction, we may reverse the district court only for an abuse of discretion, an error of law, or a clear mistake on the facts. *Rennie v. Klein*, 653 F.2d 836, 840–41 (3d Cir.1981), *vacated on other grounds*, 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982); *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir.1975). It follows from our earlier discussion that the only issue remaining is whether the district court properly applied the four standards to ALCOSAN's contention that the EPA violated a non-discretionary duty.

After several days of hearings and briefing by the parties, the court concluded that ALCOSAN had not demonstrated a reasonable likelihood of success against the EPA, and doubted that plaintiff had shown irreparable harm. In the district judge's view, ALCOSAN had not demonstrated a basis for enjoining disbursement of Pennsylvania's entire allotment of 1982 and 1983 construction grant funds. In addition, the court determined that further delay in the grant program would not be in the public interest because of the effect on pollution abatement, water quality, and the public health.

We are persuaded that the district court had an adequate basis for arriving at its conclusions and did not abuse its discretion in denying a preliminary injunction.

Accordingly, the orders of the district court will be affirmed.

utes, particularly the Coastal Zone Management Act. *See id.* at 190–91. Consequently, in *Cape May Greene*, the comprehensive enforcement scheme of the Water Pollution Control Act did not come into play and there was no preclusion issue because the plaintiff did not seek redress for a violation of that statute.