Raymond PROFFITT

v.

**Arthur DAVIS, Secretary of Pennsylvania's Department of Environmental Resources.**

No. 87–1279.

United States District Court,
E.D. Pennsylvania.

Feb. 17, 1989.

Raymond Proffitt, Levittown, Pa., pro se.

John R. Embick, Office of Chief Counsel—Eastern Region, Com. of Pa., Dept. of Environmental Resources, Denise A. Kuhn, Deputy Atty. Gen., Philadelphia, Pa., for Davis.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(b). For the reasons stated herein, after full consideration of the supporting legal briefs and affidavits, defendant's motion for summary judgment will be granted.

## I. BACKGROUND

Plaintiff John Proffitt has been responsible for bringing a number of private citizen suit enforcement actions under various federal environmental statutes.[1] In the present action, plaintiff has brought suit, *pro se*, against the defendant Arthur Davis in his official capacity as Secretary of Pennsylvania's Department of Environmental Resources ("DER"), claiming that he has failed to enforce numerous consent orders with dischargers of hazardous pollutants in Lower Bucks County, Pennsylvania ("Lower Bucks County"), in violation of both the Clean Water Act (33 U.S.C. § 1251, *et seq.*) ("CWA") and the Resources Conservation and Recovery Act of 1976 (42 U.S.C. §§ 6901, *et seq.*) ("RCRA"). In addition, plaintiff alleges that defendant has authorized new or additional sewer connections after dischargers have exceeded their permit limits. The above claims are based exclusively upon the citizen suit provisions of the above cited Acts (33 U.S.C. § 1365; 42 U.S.C. § 6972).

Plaintiff's complaint can be summarized as follows. Defendant is sworn to enforce the environmental laws of Pennsylvania. He is also responsible for the regulation and enforcement of federal laws regarding water quality, in particular the CWA and the RCRA. Plaintiff contends that defendant is either "unable" or "unwilling" to provide equal or fair enforcement of these laws. Specifically, plaintiff claims that the DER knows that numerous municipalities in Lower Bucks County are violating their discharge permits, known as National Pollutant Discharge Elimination system permits. It is alleged that either the federal government or the DER issues these permits to public and private entities that operate sewage treatment plants ("Dischargers").[2] These permits, according to plaintiff, allow such entities to discharge a limited amount of treated sewer effluent into the waterways. Since it is the DER's responsibility to monitor and enforce the permit limits, Dischargers must file Discharge Monitoring Reports ("DMR") with the DER. At his deposition, plaintiff testified that he personally examines DMRs at DER's Norristown, Pennsylvania office and, if, after reviewing these documents, he determines that Dischargers have exceeded their permit limits, a citizen suit is instituted against the Discharger seeking a ban on additional hookups.[3]

Prior to instituting such an action, plaintiff is required by law to give the Dischargers and the DER sixty days notice of his intent to bring such a suit. The plaintiff presently claims that during this sixty day

---

1. Plaintiff estimates that he has brought at least a dozen such enforcement actions.

2. In his deposition, plaintiff referred to the Dischargers in a number of ways, including "municipalities," "sewage treatment plants," "violators," and "permit holders."

3. Plaintiff testified that he has personally documented over four thousand violations by the townships of Morrisville, Yardley, and Lower Makefield, Pennsylvania, alone.

notice period the targeted Dischargers contact the DER, admit they have exceeded their permit limits, and enter into consent orders with the DER and agree not to violate it again. In addition, as part of the consent order, the DER usually imposes a fine on the Discharger and bans or prohibits additional "hookups"[4] until there is compliance with the limits imposed by the permits.

While these consent orders are in effect, plaintiff contends that the Dischargers often apply to the DER for additional hookups which are usually authorized by the department to conform to the desires of additional users, builders or homeowners when they want to hook into a Discharger's sewage system. This action, plaintiff argues, violates the consent order and amounts to an increased violation of the original discharge permit.

As a result of the DER's failure to properly regulate Dischargers in Lower Bucks County by enforcing consent orders, the plaintiff now claims he is involved in a number of lawsuits involving Dischargers within the Bucks County area. Plaintiff testified at his deposition that he is currently involved in consent orders, court actions or sixty-day notices with the following Dischargers: Bristol Township, Langhorne Borough, Penndel, Newtown, Yardley, Lower Makefield, Morrisville, Falls, Lower Bucks and Wood School. Plaintiff's dep. pp. 53–54. Plaintiff claims that the above actions are all based on information present in DER's files. See plaintiff's dep. p. 54.

Plaintiff has cited Jack's Marina as an example of the DER's failure to properly enforce consent orders. Plaintiff's dep. pp. 49–52. In 1982, plaintiff alleged that the marina was illegally dumping demolition rubbish in federally protected wetlands. Plaintiff's dep. pp. 49–50. Sometime in 1982, plaintiff claims that the DER and Jack's Marina entered into a consent order wherein the DER directed the marina to restore the wetlands and pay a $460,000 fine. In the present action, plaintiff alleges that the destruction of the wetlands continues, and no part of the fine has ever been paid by the marina. Plaintiff's dep. pp. 50, 52.

In addition to the above environmental law claims, plaintiff also contends that the DER has violated the Freedom of Information Act (5 U.S.C. § 552) and/or the Federal Sunshine Act (5 U.S.C. § 552b) by refusing to make files and reports available to him. Specifically, plaintiff alleges that the DER has been unwilling to share pertinent information on the monitoring of wells, the disposal of toxic and hazardous waste in landfills, the status of certain permits, and the issuance of consent orders.

Plaintiff has cited two instances to show the DER's unwillingness to supply information to him.

First, plaintiff testified that for several years he complained to the DER about one Harry Fawkes, d/b/a Penn Sanitation, who he claimed was operating an illegal and unlicensed landfill in Bristol, Pennsylvania, for more than two years. When the DER sent an investigator to this site, plaintiff and another gentleman accompanied him. Plaintiff claims that he observed the investigator unearth five metal containers and take samples from each. The investigator filled out a report and sent samples to the laboratory for analysis. Plaintiff contends that for the past six months he has sought, without success, to obtain a copy of this report to see what action, if any, was or will be taken against the landfill. Plaintiff's dep. p. 48.

Second, plaintiff claims he has been unable to obtain any information about Jack's Marina from the DER.

As a result of the aforementioned claims, plaintiff seeks the following relief: (1) where a Discharger receives a sixty-day notice, the DER should be prohibited from entering into a consent order with that Discharger; (2) where a Discharger's plant is "overloaded," the DER should be prohibited from authorizing additional hookups;

4. Plaintiff defines a "hookup" as a private sewer line which is connected or hooked up to a Discharger's sewage system. See plaintiff's dep. pp. 18–19.

and (3) where a Discharger exceeds its permit limits, the DER should fine the Discharger an amount appropriate to cover the cost of upgrading the sewage treatment so that it can comply with its permit requirements even with the additional hookups. Plaintiff's dep. pp. 55–62a.

In response to the above allegations, the defendant contends that neither the citizen suit provision of the CWA, nor that of the RCRA, provide a jurisdictional basis for plaintiff's present action. The defendant also argues that, assuming the court finds it has jurisdiction over the present matter, the Eleventh Amendment bars the present action. Also, defendant requests that the court abstain from deciding plaintiff's claim regarding Jack's Marina because the state is conducting an ongoing investigation of the matter. With regard to plaintiff's Freedom of Information Act claims, the defendant contends that such laws do not apply to it because it is not an "agency" for purposes of pertinent federal statutes. In addition, the defendant argues that the court cannot provide the requested relief if it has jurisdiction over the action. Each of these contentions will be discussed below as they relate to plaintiff's claims.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Fed.R.Civ.P. 56(c) instructs a court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The function of a motion for summary judgment is to avoid a useless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment is inappropriate, however, where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. However, if the evidence is merely "colorable" or is "not significantly probative," summary judgment may be granted. *Id.* at 249–250, 106 S.Ct. at 2511.

In a summary judgment action, the moving party bears the initial burden of identifying for the court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the non-movant (*i.e.,* plaintiff herein) will bear the burden of persuasion at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Id.* at 324, 106 S.Ct. at 2553; *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,* 812 F.2d 141, 144 (3d Cir.1987).

Following such a showing in a case where the non-moving party is the plaintiff and therefore bears the burden of proof, it must by affidavits or by the depositions and admissions on file "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Id.* 477 U.S. at 322, 106 S.Ct. at 2553; *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988); *Equimark, supra,* 812 F.2d at 144; Fed.R. Civ.P. 56(e). In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party, *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982), must resolve all doubts against the moving party, *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must take as true all allegations of the non-moving party that conflict with those of the movant, *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513.

In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987) *(en banc), cert. denied,* —— U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815 (1988); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 568 (3d Cir.1986). "As to materiality, the substantive law will identify which facts are material." *Anderson, supra,* 477 U.S., at 248, 106 S.Ct. at 2510 (1986). An issue is "genuine only if the evidence is such that a reasonable jury could find for the non-moving party." *Id.; Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir. 1987).

A party resisting a Fed.R.Civ.P. 56 motion cannot expect to rely upon base assertions, conclusory allegations or suspicions. *Gans, supra,* 762 F.2d at 341. Once the moving party has presented evidence which would require a directed verdict at trial, the burden shifts to the opposing party to respond with specific facts showing that a genuine issue for trial exists. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against them. Fed.R.Civ.P. 56(e); *Gans supra,* 762 F.2d at 341.

With the above factors in mind, the court will now proceed to address the merits of the present motion.

### B. *The Citizen Suit Provisions Of The CWA And The RCRA Do Not Provide A Jurisdictional Basis For The Present Action*

The defendant's primary contention in support of the present motion is that neither the citizen suit provision of the CWA, nor that of the RCRA, provides a jurisdictional basis for the present action. In general, these provisions authorize the private enforcement of the requirements of the respective statutes by affected persons against alleged polluters. Specifically, the citizen suit provision of the CWA (33 U.S.C. § 1365(a)) provides the following:

Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator....

Similarly, the citizen suit provision of the RCRA (42 U.S.C. § 6972) states as follows:

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) against any person including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment; or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

■ The court concludes that, at least as it pertains to the citizen suit provision of the CWA, the present action is controlled by the decision of the United States Court of Appeals for the Third Circuit in *Allegheny County Sanitary Authority v. United States Environmental Protection Agency,* 732 F.2d 1167 (3d Cir.1984). In this case, a municipal sewage authority brought an action against various state and federal agencies, including the Secretary of the DER, arising out of the authority's failure to receive funding under the CWA. The court held that the state, its agencies and officials are not proper defendants in a citizen suit enforcement action alleging violations of the CWA. The court reasoned that the act explicitly limited defendants in such actions to "(1) those who violate an effluent standard or an order issued with respect to such a standard, and (2) the federal administrator for the failure to perform non-discretionary acts or duties." *Allegheny County, supra,* 732 F.2d at 1175. Because none of the state defendants fell within either of these categories, the court concluded that the CWA failed to grant an express right of action against such parties. *Id.*

In view of the *Allegheny County* case discussed above, the court is compelled to conclude that the citizen suit provision of the CWA does not provide a jurisdictional basis for the present action. *See also Fairview Township v. United States Environmental Protection Agency,* 593 F.Supp. 1311, 1314 (M.D.Pa.1984) (action by township brought under the citizen suit provision of CWA against, among others, the Pennsylvania DEP dismissed in light of *Allegheny County* case).

■ Having concluded that the CWA's citizen suit provision does not provide a jurisdictional basis for this action, the court must next determine whether the analogous provision of the RCRA would authorize the present action.

At the outset, it should be noted that there is little of authority on this issue. The defendant has cited one case, a bench opinion issued by Judge Louis H. Pollak of the United States District Court for the Eastern District of Pennsylvania, *O'Leary v. Moyers Landfill, Inc.,* No. 80–3849 (E.D.Pa. Dec. 23, 1980), which supports the proposition that the citizen suit provision of the RCRA does not provide a jurisdictional basis for the present action. The court, in this opinion, concluded that neither the citizen suit provision of the CWA, nor that of the RCRA, authorizes the bringing of private enforcement actions against state agencies for their failure to implement a particular type of enforcement mechanism. The decision suggests that a governmental agency, whether state or federal, whose relationship to the pollution process is merely regulatory in nature could never be in violation of either the CWA or the RCRA simply because they fail to pursue a particular course of enforcement. This, the judge thought, was the type of decision that fell traditionally within the discretion of the enforcement agency. Because the language of the citizen suit provisions of both acts were identically worded, the judge concluded that their effect in the present context should also be the same.

In light of this opinion, along with the Third Circuit's decision in the *Allegheny County* case extensively discussed earlier, the court concludes that the citizen suit provision of the RCRA does not provide a jurisdictional basis for the present action. Like the CWA, § 6972(a)(1) of the RCRA explicitly states that it only applies to those who are actually involved with the handling, storage, treatment, transportation or disposal of any solid or hazardous waste. This section makes no mention of governmental agencies who fail to implement a particular means of enforcing the requirements of the act.

Moreover, § 6972(a)(2), which authorizes an action against the administrator, mirrors § 1365(a)(2) of the CWA which, as previously mentioned, has been held not to authorize a private enforcement action against a state agency. It makes little sense to apply a different standard to two identically-worded statutes.

Thus, in view of the fact that neither the citizen suit provision of the CWA, nor that of the RCRA, provides a jurisdictional basis for the present action, it must be dismissed. As a result, the defendant's motion for summary judgment will be granted.

C. *The DER Is Not Subject To The Federal Freedom Of Information Act (5 U.S.C. § 552) Or The Government In The Sunshine Act (5 U.S.C. § 552b)*

■ Plaintiff next claims that the DER has violated federal "right-to-know" laws including the Freedom of Information Act, 5 U.S.C. § 552, and the Government in the Sunshine Act, 5 U.S.C. § 552b, by refusing to make certain files and records available to him.

The Freedom of Information Act (FOIA) provides for the mandatory disclosure of records and material in the possession of *federal* agencies, unless the requested materials fall under one of the statute's nine exemptions. "Agency" as defined in sections 552(a)(1) and 552(f), however, does not include *state* agencies or bodies. *St. Michael's Convalescent Hosp. v. State of California,* 643 F.2d 1369, 1373 (9th Cir. 1981). *See also Kerr v. United States District Court,* 511 F.2d 192, 197 (9th Cir. 1975), *aff'd on other grounds,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Ryans v. New Jersey Comm'n for the Blind,* 542 F.Supp. 841, 852 (D.N.J.1982). Thus, the DER, as a state agency, is not subject to the disclosure provisions of the FOIA. Likewise, the Government in the Sunshine Act ("Sunshine Act") requires every meeting of an applicable "agency" to be open to the public. 5 U.S.C. § 552b. Since "agency" under the Sunshine Act is defined in terms of the FOIA, state agencies are, *a fortiori,* not included and the DER is exempt. *See Rushforth v. Council of Economic Advisers,* 762 F.2d 1038, 1043–1044 (D.C.Cir.1985); *Symons v. Chrysler Corp. Loan Guarantee Bd.,* 670 F.2d 238, 249 (D.C.Cir.1981).

■ The finding that the DER is not subject to the provisions of the FOIA or Sunshine Act does not preclude a plaintiff from seeking access to information from a state agency. Pennsylvania's counterpart to these federal statutes is the Pennsylvania Right to Know Act, 65 Pa.Stat. § 66.2. Section 2 provides that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 Pa.Stat. § 66.2. Although the DER is clearly an "agency" within § 66.1(1), the definition of a "public record" does not include "any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties...." 65 Pa.Stat. § 66.1(2). The information which plaintiff seeks appears to fall under this investigatory exemption.

However, even if the information which plaintiff seeks are "public records" and plaintiff has been denied his right to examine and inspect such records, plaintiff has not followed the proper procedure to remedy this denial. Section 66.4 provides the appropriate method of relief:

> Any citizen of the Commonwealth of Pennsylvania denied any right granted to him by section 2 or section 3 of this act, may appeal from such denial. If such court determines that such denial was not for just and proper cause under the terms of this act, it may enter such order for disclosure as it may deem proper.

This statutory remedy is exclusive. *Hoffman v. Comm. of Pa., Pa. Game Comm'n,* 71 Pa.Commw. 99, 102, 455 A.2d 731, 732 (1983) *(citing Wiley v. Woods,* 393 Pa. 341, 350 n. 9, 141 A.2d 844, 849 n. 9 (1958); *Barton v. Penco,* 292 Pa.Super. 202, 204 n. 2, 436 A.2d 1222, 1223 n. 2 (1981); *Lewis v. Thornburgh,* 68 Pa.Commw. 157, 160, 448 A.2d 680, 682 (1982)). Although it is not clear on the face of the statute to which "court" a citizen may appeal, section 66.4 formerly provided the following:

> Any citizen of the Commonwealth of Pennsylvania denied any right granted to him by section 2 or section 3 of this act, may appeal from such denial to the Court of Common Pleas of Dauphin County [now the Commonwealth Court] if an agency of the Commonwealth is involved, or to the appropriate judicial district if a political subdivision or any agency thereof is involved. If such court determines that such denial was not for just and proper cause under the terms of this act, it may enter such order for disclosure as it may deem proper.

Since new section 66.4 became effective on June 27, 1978, those actions involving an agency of the Commonwealth continue to be brought in Commonwealth Court and those involving a political subdivision or agency thereof still originate in the courts of common pleas. *See Aamodt v. Comm. of Pa., Dep't of Health,* 94 Pa.Commw. 54, 502 A.2d 776 (1986); *Pennsylvania Ass'n for Children and Adults With Learning Disabilities v. Comm. of Pennsylvania, Dep't of Ed.,* 91 Pa.Commw. 531, 498 A.2d 16 (1985). Thus, original exclusive jurisdiction to entertain review of action denying a citizen's access to information within the control of the DER lies in the Commonwealth Court of Pennsylvania, not in the United States District Court for the Eastern District of Pennsylvania.

## III. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment will be granted.

An appropriate Order will be entered.