**GE CAPITAL MORTGAGE SERVICES, INC.**

v.

**PINNACLE MORTGAGE INVESTMENT CORP., Sandra Stevens–Miller, and Albert A. Miller, III.**

Civ. A. No. 94–7031.

United States District Court, Eastern District of Pennsylvania.

July 13, 1995.

Norman E. Greenspan, Blank, Rome, Comisky and McCauley, Philadelphia, PA, for plaintiff.

Dante Mattioni, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, PA, for Pinnacle Mortgage Investment Corp.

Dante Mattioni, John Mattioni, Stephen M. Martin, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, PA, for Sandra Stevens Miller and Albert A. Miller.

### MEMORANDUM

CAHN, Chief Judge.

Plaintiff GE Capital Mortgage Services, Inc. ("GE Capital") brought this action against the Pinnacle Mortgage Investment Corporation ("Pinnacle"), Sandra Stevens–Miller, and Albert A. Miller, III (collectively, the "defendants"). This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Currently before the court are GE Capital's motions to reconsider this court's May 9, 1995 ruling and to dismiss the defendants' counterclaims.

## I. Background

The facts of this case were set forth fully in this court's May 9, 1995 Memorandum (the "Memorandum"). *GE Capital Mortgage Services, Inc. v. Pinnacle Mortgage Investment Corporation,* No. CIV.A. 94–7031, 1995 WL 290443 (E.D.Pa. May 9, 1995). In order to properly address the current motions, however, the court will briefly summarize the relevant facts.

Prior to its bankruptcy, Pinnacle was a mortgage broker with offices in Pennsylvania and New Jersey. Sandra Stevens–Miller and Albert A. Miller, III (the "Miller Defendants") are Pinnacle's only shareholders.

On July 14, 1993, Pinnacle, Cooper River Funding Inc., and GE Capital executed a loan (the "Credit Agreement") whereby a secured Line of Credit for $10 million was extended to Pinnacle. This Line of Credit was increased subsequently to $15 million. The Credit Agreement was secured by Pinnacle's mortgage loans, and by the Miller Defendants' personal guaranties (the "Guaranties").

GE Capital contends that Pinnacle failed to make payments as required by the Credit Agreement, and misled GE Capital with regard to the amount of collateral securing the Credit Agreement. GE Capital further claims that the Guaranties obligate the Miller Defendants to answer for Pinnacle's default under the Credit Agreement.

On November 23, 1994, GE Capital filed a five count complaint against the defendants. Because an involuntary bankruptcy petition has been filed against Pinnacle, however, only GE Capital's claims against the Miller Defendants are before the court. On May 9, 1995, this court denied GE Capital's motion for summary judgment on its breach of guaranty claim (the "Guaranty claim") against the Miller Defendants. *Id.*

The defendants, however, claim that the parties reached a new oral contract (the "Oral Agreement") which canceled Pinnacle's default under the Credit Agreement, and that GE Capital has failed to abide by the terms of this new Oral Agreement. Defendants also allege that personnel employed within GE Capital's public relations department contacted the *Intelligencer Journal,* a Lancaster, Pennsylvania newspaper, and falsely reported that the Miller Defendants had misappropriated funds owed to GE Capital. In addition, defendants contend that GE Capital intentionally failed to sign the docu-

ments which allegedly contain all terms of the Oral Agreement (the "Restructuring Agreement" and the "Stock Purchase Agreement") in order to cause Pinnacle to default on loans that Provident Savings Bank ("Provident") extended to Pinnacle. Finally, defendants claim that, during GE Capital's investigation of Pinnacle, GE Capital became privy to defendants' trade secrets and converted them to its own use.

Based on the foregoing, defendants filed counterclaims against GE Capital for: (1) breach of the Oral Agreement; (2) defamation; (3) tortious interference with contractual relations; and (4) misappropriation of trade secrets.

■ Two motions are currently before the court. First, GE Capital has moved this court to reconsider its denial of summary judgment on the Guaranty claim. The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly-discovered evidence." *Harsco Corporation v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985); *Cohen v. Austin*, 869 F.Supp. 320, 321 (E.D.Pa.1994). Because federal

courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly. *Continental Casualty Company v. Diversified Industries, Inc.*, 884 F.Supp. 937, 943 (E.D.Pa.1995).

Second, GE Capital has moved to dismiss each count of the defendants' Counterclaim. In ruling on GE Capital's motion to dismiss, the court will accept as true all facts alleged in defendants' counterclaim and all reasonable inferences that can be drawn from them. *Malia v. General Electric Company*, 23 F.3d 828, 830 (3d Cir.1994); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir.1994).

## II. The Oral Agreement

■ On May 9, 1995, this court denied GE Capital's motion for summary judgment against the Miller Defendants. The basis of the court's ruling was the Miller Defendants' contention that the Oral Agreement validly superseded the Credit Agreement, and that therefore, under New York law, the Miller Defendants are not liable for Pinnacle's default under the Credit Agreement.[1] *See Pro-*

---

1. Taking its cue from footnote 9 of the court's Memorandum, GE Capital argues, in its Reply Memorandum in Support of its Motion for Reconsideration, that this court erred by holding that the Credit Agreement, which is governed by New Jersey law, could be modified orally. In making this argument, GE Capital relies upon New Jersey's statute of frauds, N.J.Stat.Ann. § 25:1–5(f) and (g), and various cases holding that contracts within New Jersey's statute of frauds may not be modified orally. *See, e.g., National Community Bank v. G.L.T. Industries, Inc.*, 276 N.J.Super. 1, 647 A.2d 157 (App.Div. 1994).

The court has long considered the application of New Jersey's statute of frauds to the Oral Agreement to be the trickiest issue presented by this litigation. However, for the reasons discussed in footnote number 9 of the Memorandum, the court has concluded that Pennsylvania law, as stipulated by the parties, governs the interpretation of the Oral Agreement. *See GE Capital Mortgage Services*, 1995 WL 290443, at *9, n. 7. Therefore, instead of reiterating the reasoning provided in the Memorandum, the court will merely remind GE Capital that the Oral Agreement, as alleged by the defendants and as assumed by the court in the Memorandum, is an entirely new, independent contract which does not depend upon the Credit Agreement for its existence. For purposes of the Memorandum, the Oral Agreement was assumed

to *novate* the Credit Agreement, and not merely modify or extend it. In sum, the court concludes that parties to a contract may elect to create an entirely new contractual relation, and stipulate that the new contract's legal effect is to be governed by a different state's law than the prior contract.

Moreover, GE Capital's reliance upon *Cedrone v. Unity Savings Association*, 609 F.Supp. 250, 255 (E.D.Pa.1985), and *United States v. 29.16 Acres, More or Less*, 496 F.Supp. 924, 928 (E.D.Pa.1980), is misplaced. While Pennsylvania law provides that a contract governed by the statute of frauds may not be altered or modified by subsequent oral agreement, this rule only applies to the modification of contracts within Pennsylvania's, and not other state's, statute of frauds.

Finally, the court notes that its citation of *Estate of Connelly v. United States*, 398 F.Supp. 815 (D.N.J.1975), *aff'd*, 551 F.2d 545 (3d Cir. 1977), *Headley v. Cavileer*, 82 A. 908, 910 (N.J. 1912), and *Frommeyer v. L & R Construction Company*, 261 F.2d 879, 882 (3d Cir.1958), in the Memorandum was not in response to GE Capital's argument with regard to New Jersey's statute of frauds. In fact, GE Capital has only recently, in its Reply Memorandum in Support of its Motion for Reconsideration, raised this argument. *See GE Capital Mortgage Services*, 1995 WL 290443, at *9, n. 7 ("neither party has ar-

*Specialties, Inc. v. Thomas Funding Corporation,* 812 F.2d 797, 799 (2d Cir.1987) ("the general rule is that the guarantor is not liable unless the principal is bound"); *Midwest Corporation v. Global Cable, Inc.,* 688 F.Supp. 872, 875 (S.D.N.Y.1988) ("the guarantor cannot be liable for an amount greater than that for which the principal is liable"); *Canterbury Realty & Equipment Corporation v. Poughkeepsie Savings Bank,* 135 A.D.2d 102, 524 N.Y.S.2d 531, 533 (1988) (absolute guarantor's liability "intertwined" with principal's liability).

■ GE Capital has moved the court to reconsider this ruling, and to dismiss defendants' counterclaim for breach of the Oral Agreement.[2] GE Capital contends that even if the parties agreed to the terms of the Oral Agreement, GE Capital nevertheless had the power to withdraw from the Oral Agreement without jeopardizing its rights under the Credit Agreement. In addition, GE Capital claims that the Oral Agreement did not discharge the defendants' obligations under the Credit Agreement. Because both of GE Capital's motions turn upon the interpretation of the Oral Agreement, the court will consider them simultaneously.

### A. *Withdrawal Rights*

■ Defendants contend that the Oral Agreement constitutes a new contract which validly superseded the Credit Agreement. Because the Stock Purchase Agreement expressly provides GE Capital with the right to withdraw from the documents which constitute the Oral Agreement, however, the Credit Agreement has not validly been canceled.

Section 21 of the Stock Purchase Agreement, entitled "Purchaser's Right to Withdraw," (the "Withdrawal Provision") provides in pertinent part:

[GE Capital] may elect within two business days after the date of its execution of this agreement, to withdraw from this agreement and receive a full refund of all monies paid. [GE Capital's] withdrawal hereunder will be without further liability to any person. For [GE Capital] to accomplish this withdrawal, [GE Capital] need only send a letter or telegram to [Pinnacle] indicating its intention to withdraw....

Defendants' Answer and Counterclaim to Plaintiff's Amended Complaint, Exhibit 2 (the "Stock Purchase Agreement"), Section 21(a), p. 65.

Under Pennsylvania law, GE Capital's right to withdraw from the Oral Agreement is clear. In *Temp–Way Corporation v. Continental Bank,* 139 B.R. 299 (E.D.Pa.), *aff'd,* 981 F.2d 1248 (3d Cir.1992), for instance, Judge Bechtle noted that:

While Pennsylvania recognizes an implied contractual duty of good faith in limited situations, it has refused to do so in the lender/borrower relationship. Pennsylvania courts have also refused to impose a duty of good faith upon creditors which would modify or defeat their legal rights.... As stated by the Superior Court of Pennsylvania: "The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by ... the terms of its contract. Similarly, it cannot be said that a lender has violated a duty of good faith merely because it has negotiated terms of a loan which are favorable to itself...." It is also well settled in Pennsylvania that *no obligation of "good faith" applies to decisions either to terminate or not renew an agreement when the agreement reserves to a party the express right to make that decision.*

*Id.* at 319–320 (citations omitted) (emphasis added). *See also Chrysler Credit Corporation v. B.J.M., Jr., Inc.,* 834 F.Supp. 813, 842 (E.D.Pa.1993); *Bohm v. Commerce Union*

---

gued that the Oral Agreement's legal effect is not to be determined under Pennsylvania law"). Instead, the above cases were relevant to GE Capital's contention that Section 11.12 of the Credit Agreement contractually bars oral modification of the Credit Agreement.

**2.** Many of the arguments raised in the instant motions were either not raised or insufficiently developed in the parties' earlier briefs. Therefore, notwithstanding this court's interest in finality, the court will grant GE Capital's motion for reconsideration. *See Hatco Corporation v. W.R. Grace & Company,* 849 F.Supp. 987, 990 (D.N.J.1994) ("in its discretion, the Court may grant a motion for reconsideration where the record was inadequately developed on a particular issue").

*Bank,* 794 F.Supp. 158, 163 (W.D.Pa.1992); *Creeger Brick and Building Supply, Inc. v. Mid–State Bank and Trust Company,* 385 Pa.Super. 30, 560 A.2d 151, 154 (1989).

■ The Miller Defendants contend that, because only the Stock Purchase Agreement contains the Withdrawal Provision, GE Capital may not withdraw from the Restructuring Agreement.[3] In making this argument, the Miller Defendants rely upon *USX Corporation v. Prime Leasing, Inc.,* 988 F.2d 433 (3d Cir.1993) where the Court of Appeals held that a nonrecourse provision contained within one financing agreement did not apply to another, related financing agreement. *See id.* at 437–438 ("regardless of the various interrelationships of the agreements, it is clear as a matter of contract law that the applicability of certain provisions may be limited to the documents in which they actually appear").

Unlike the nonrecourse provision in *USX,* however, the Withdrawal Provision refers to the Restructuring Agreement and expressly gives GE Capital the right to withdraw from it. Subsection (b) of the Withdrawal Provision provides:

> Upon [GE Capital's] exercise of its right to withdraw described in paragraph (a) above, this agreement shall be null, void, and of no further force or effect. All copies of the Transaction Documents and *all other agreements, mortgages and documents delivered pursuant to the Loan Agreement hereof shall be returned to the delivering party and shall similarly be null, void and of no further force or effect.*[4]

Stock Purchase Agreement, Section 21(b), p. 65 (emphasis added). *Cf. USX,* 988 F.2d at 438 (where nonrecourse provision "by its terms, refers only to the document in which it appears," it may not be applied to other related financing agreements); *see also* 17A Am.Jur.2d Contracts § 388 ("Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect.").

■ The Miller Defendants also contend that the parties did not intend the Withdrawal Provision to apply to the Restructuring Agreement, and that the Withdrawal Provision was included within the Stock Purchase Agreement only to comply with Pennsylvania law relating to the sale of securities. However, under the approach articulated by the Court of Appeals for the Third Circuit in *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001 (3d Cir.1980), this court finds the Withdrawal Provision to be clear and unambiguous. Therefore, the court must give effect to the Withdrawal Provision without regard to the reason why the provision was included initially in the Stock Purchase Agreement. In addition, because the Withdrawal Provision is clear on this point, the court must disregard the Miller Defendant's subjective understanding that the Withdrawal Provision would apply only to the Stock Purchase Agreement.

■ Finally, the Miller Defendants claim that GE Capital may not exercise its rights under the Withdrawal Provision because the

---

**3.** The Miller Defendants have offered other reasons why the Withdrawal Provision should not be given effect. First, they claim that the provision was not included in any prior drafts of the Stock Purchase Agreement. Second, they claim that enforcing the Withdrawal Provision would be inequitable because Pinnacle began the downsizing allegedly required by GE Capital. Third, the Miller Defendants contend that GE Capital has waived its right to withdraw.

It is immaterial to the instant motions that prior versions of the draft documents failed to include the Withdrawal Provision. Indeed, it has been the Miller Defendants' primary contention throughout this litigation that the version of the Stock Purchase Agreement attached to their Counterclaims constitutes one part of the Oral Agreement. Also, even if Pinnacle attempted to

prepare for the Restructuring Agreement by beginning to downsize, this court will not preclude GE Capital from enforcing the express terms of its agreements. Finally, the court concludes that GE Capital has not waived its right to withdraw. Instead of failing to withdraw in a timely fashion, GE Capital expressed its desire to withdraw even prior to the scheduled execution date of the Stock Purchase Agreement.

**4.** "Loan Agreement" is defined in Section 28 of the Stock Purchase Agreement as the Restated Credit Agreement. Stock Purchase Agreement, Section 28, p. 78. In the Memorandum, this court defined the Restated Credit Agreement as the Restructuring Agreement and has used this nomenclature through this litigation.

parties have entered into a fiduciary relationship. The court cannot currently determine whether such a relationship exists. Assuming, however, that there was such a relationship, GE Capital may still exercise its withdrawal rights.

 Ordinarily, a lender does not owe a fiduciary duty to a borrower. *Federal Land Bank v. Fetner,* 269 Pa.Super. 455, 410 A.2d 344 (1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). However, a confidential relationship may arise where the creditor "gains substantial control over the debtor's business affairs." *Stainton v. Tarantino,* 637 F.Supp. 1051, 1066 (E.D.Pa.1986). *See also Chrysler Credit Corporation,* 834 F.Supp. at 842 ("a business association may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of his affairs to the other"). Generally, in establishing such a relationship, "courts have insisted upon a strong showing of control." *Blue Line Coal Company v. Equibank,* 683 F.Supp. 493, 496 (E.D.Pa.1988).

The Miller Defendants contend that, during the negotiation of the Oral Agreements, GE Capital was given "substantial control" over Pinnacle, and that GE Capital now owes the defendants a fiduciary duty. Because determining the amount of control given to GE Capital necessarily is a fact-intensive inquiry, the court is not currently able to ascertain whether a fiduciary relationship has been established. However, this does not require the court to preclude GE Capital from exercising its rights under the Withdrawal Provision.

The Restatement (Second) of Contracts, Section 173 ("Section 173") is applicable to an alleged abuse of a fiduciary duty by a party to a contract. This section provides:

> If a fiduciary makes a contract with his beneficiary relating to matters within the scope of the fiduciary relation, the contract is voidable by the beneficiary, unless:
>
> (a) it is on fair terms, and

(b) all parties beneficially interested manifest assent with full understanding of their legal rights and of all relevant facts that the fiduciary knows or should know.

Restatement (Second) of Contracts, § 173.

 The Miller Defendants have not argued that either the Stock Purchase Agreement or Restructuring Agreement is unfair. *See Merrill, Lynch, Pierce, Fenner & Smith v. Perelle,* 356 Pa.Super. 165, 514 A.2d 552, 560 (1986) ("as appellee did not contend ... that the contract was unfair or that his assent to the contract was improperly procured, the contract is not voidable pursuant to Section 173"). Indeed, the Miller Defendants' primary thrust throughout this litigation has been that these documents constitute binding, enforceable contracts. *See* Restatement (Second) of Contracts, § 380 (a party may lose the power to avoid a contract if, after the abuse of a fiduciary relation ceases to exist, the party "manifests to the other party his intention to affirm it"). In addition, the Miller Defendants were represented by counsel during the negotiation of these documents, and presumably understood the legal effect of the Withdrawal Provision. Moreover, the relief that the Miller Defendants seek, including a claim for breach of the Oral Agreement by GE Capital, "is not the relief available to a party who seeks to avoid a contract based upon abuse of fiduciary relation." *Merrill, Lynch,* 514 A.2d at 560. Finally, after reviewing the Stock Purchase and Restructuring Agreements, the court finds them to be fair.[5] Therefore, the court concludes that the Miller Defendants may not avoid the Stock Purchase and Restructuring Agreements.

 Even if the court were to find that GE Capital's alleged breach of its fiduciary duty allows the Miller Defendants to avoid its agreements, the court would nevertheless conclude that GE Capital may exercise its rights under the Withdrawal Provision. Section 383 of the Restatement (Second) of Contracts forbids a party, who is able to avoid a

---

5. Any "unfairness" in the Stock Purchase and Restructuring Agreements is easily explained by the fact that the Miller Defendants had previously defaulted under the Credit Agreement. There-fore, GE Capital was unwilling to extend further credit to the defendants without acquiring additional collateral and control over Pinnacle's affairs.

contract, from picking and choosing the terms of the contract which the party wants to enforce.[6] *See* Restatement (Second) of Contracts, § 383, comment a ("A party who has the power of avoidance must ordinarily avoid the entire contract, including any part that has already been performed. He cannot disaffirm part of the contract that is particularly disadvantageous to himself while affirming a more advantageous part ..."). Therefore, the Miller Defendants may not avoid the Withdrawal Provision without avoiding the entire Stock Purchase Agreement.

The Withdrawal Provision explicitly gives GE Capital the right to withdraw within two days after the Stock Purchase Agreement's execution. The Agreement was never executed. Therefore, GE Capital's right to withdraw from the Oral Agreement has not lapsed. Even if the Miller Defendants could establish that a fiduciary relationship existed, they could not avoid the Withdrawal Provision. Accordingly, the court concludes that GE Capital may withdraw from the Oral Agreement and proceed against Pinnacle and the Miller Defendants for their default under the Credit Agreement.

### B. *Breach of an Executory Accord*

■ Even if GE Capital did not have the right to withdraw from the Oral Agreement, the court nevertheless would conclude that the Oral Agreement does not cancel Pinnacle's default under the Credit Agreement.[7]

■ As discussed in the Memorandum, the Oral Agreement's execution would immediately supersede the Credit Agreement only if the Oral Agreement constituted a valid novation, as opposed to an accord.[8] Under Pennsylvania law, the party arguing that a new agreement constitutes a novation must establish the following elements: "the displacement and extinction of a valid contract, the substitution for it of a new contract, a sufficient legal consideration for the new contract, and the consent of the parties." *Buttonwood Farms, Inc. v. Carson*, 329 Pa.Super. 312, 478 A.2d 484, 486 (1984). *Accord Owen Healthcare v. Franklin Square Hospital*, 159 B.R. 453, 455 (E.D.Pa.1993). "The party asserting a novation ... has the burden of proving that the parties intended to discharge the earlier contract." *Buttonwood Farms, Inc.*, 478 A.2d at 486. Such intention "may be shown by other writings, or by words, or by conduct or by all three." *Id. Accord Surgical Sales Corporation v. Paugh*, No. CIV.A. 92-0591, 1992 WL 70415 (E.D.Pa. March 31, 1992).

In the present case, the terms of the Oral Agreement belie the Miller Defendants' claim that the Oral Agreement constitutes a novation. For instance, Sections 4 and 7.5 of

---

6. Section 383 provides:
 A contract cannot be avoided in part except that where one or more corresponding pairs of part performances have been fully performed by one or both parties the rest of the contract can be avoided.
 Restatement (Second) of Contracts, § 383.

7. In the Memorandum, the court assumed without deciding that the Oral Agreement constituted a valid novation which would operate to discharge the parties' obligations under the Credit Agreement. *GE Capital Mortgage Services*, 1995 WL 290443, at *7 ("the court will assume that the Oral Agreement as alleged by the Miller Defendants constitutes a novation under Pennsylvania law"). However, this issue had not been addressed by the parties. *Id.* Accordingly, because the court was adjudicating GE Capital's motion for summary judgment, this court was bound to give the benefit of all doubts with regard to the Oral Agreement's effect to the defendants.

8. The court stated in the Memorandum:

A novation has the effect of immediately substituting a new contract for an old one. An executory accord, by contrast, only discharges the old contract after the performance of the new agreement. As the Pennsylvania Superior Court has stated, a novation

is a mode of extinguishing one obligation by another, that is, the acceptance of a new promise in satisfaction of a previously existing claim while in the case of an accord and satisfaction it is not the new promise itself but the performance of the new promise that is accepted as a satisfaction.

*Nernberg & Laffey v. Patterson*, [411 Pa.Super. 417] 601 A.2d 1237, 1239 (1991) (quoting *Gordon Brothers, Inc. v. Kelley*, 92 Pa.Super. 485 (1927)). The differentiation of a novation and an accord "lies chiefly in the parties' intent concerning their respective effect on any prior agreement of the parties." *Id. Accord Nowicki Construction Company v. Panar Corporation, N.V.*, 492 A.2d 36 (1985).

*GE Capital Mortgage Services*, 1995 WL 290443, at *7.

the Restructuring Agreement provide in pertinent part:

> The Restated Note shall replace and supersede the note issued pursuant to the Credit Documents *but shall not release or extinguish any unpaid indebtedness thereunder.*
>
> Existing Financing Arrangements. While, *subject to the conditions hereof,* this Agreement, the Restated Note and Stock Agreement shall replace and supersede all existing financing arrangements under the Credit Documents between [Cooper], GE Capital, and [Defendants], (a) all existing liens and security interests held by [GE Capital] shall remain in effect, shall not be released or deemed released, shall be held by [GE Capital] and shall secure the Obligations, and (b) *no obligations or indebtedness of any [Defendant] to [GE Capital] shall be satisfied, discharged, or released by the execution and delivery of the Restructure Documents or Stock Agreement.*

*See* Defendants' Answer and Counterclaim, Exhibit 1 (the "Restructuring Agreement"), § 7.5 (emphasis added).

 "Whether there is a novation is ordinarily a question of fact. But where the party seeking to establish a novation does not and can not produce evidence of mutual assent to the purported novation, no question of fact exists." *American Acceptance Corporation v. Scott Housing Systems, Inc.,* 630 F.Supp. 70, 75 (E.D.Pa.1985). In the instant case, there is no question that the Oral Agreement does not constitute a novation. The documents that the Miller Defendants offer to support their claim expressly disclaim that the Oral Agreement supersedes the Credit Agreement. In addition, because the Oral Agreement documents are unambiguous on this point, any extrinsic evidence offered by the defendants to demonstrate that the parties intended to cancel the Credit Agreement would be inadmissible under the parol evidence rule. *See York Excavating*

*Company v. Employers Insurance of Wausau,* 834 F.Supp. 733, 741 (M.D.Pa.1993) ("the parol evidence rule bars the admission of evidence to vary or alter the forms of an unambiguous written contract").[9] Accordingly, the court concludes that the Oral Agreement does not constitute a novation.

The court's conclusion is in accord with relevant precedent. For example, in *Nikimiha Securities Ltd. v. Trend Group Ltd.,* 646 F.Supp. 1211 (E.D.Pa.1986), the debtor claimed that a promissory note executed by the parties constituted a novation, and therefore erased the debtor's liability under the prior obligation (the "Facility Agreement"). The court disagreed, finding the following language sufficient to negate any inference that the parties sought to extinguish the Facility Agreement:

> This note evidences an obligation arising under the terms of the certain Facility Agreement ..., and is subject to all the terms and provisions and is entitled to all the benefits and security thereof.

*Id.* at 1217. *See also In re Old Electralloy Corporation,* 132 B.R. 705, 710–711 (Bankr. W.D.Pa.1991) (no novation where new loan agreement provides that it is subject to the prior loan agreement); *Buttonwood Farms, Inc.,* 478 A.2d at 487 (novation not found where new agreement fails to provide that parties intended to supersede old agreement).

 Having concluded that the Oral Agreement is not a novation, the court finds that the Oral Agreement is, at best, an accord. Unlike a novation, which immediately discharges a prior obligation, an accord discharges the prior obligation only after the performance of the new agreement. *See Lazzarotti v. Juliano,* 322 Pa.Super. 129, 469 A.2d 216, 221 (1983) (an accord requires actual "performance and is not satisfied by a mere promise of future performance"); *River Road Development Corporation v. Carlson*

---

9. The parol evidence rule "does not bar the introduction of evidence to prove the existence of an oral contract." *York Excavating Company,* 834 F.Supp. at 741. However, consistent with the defendants' allegations, the court has assumed that the parties validly reached an Oral Agreement containing all terms as provided by the Restructuring Agreement and Stock Purchase Agreement. Thus, any evidence offered to demonstrate an intent by the parties to novate would not go to the existence of an oral contract. Instead, such evidence would be offered by the defendants only to alter the terms of the unambiguous Oral Agreement.

*Corporation–Northeast, Seaboard Surety Company,* CIV.A. Nos. 89–7037, 90–2386, 1992 WL 212351, at *24 (E.D.Pa. Aug. 27, 1992) (only the obligor's performance of the accord satisfies the obligee's original claim). The Restatement (Second) of Contracts provides:

> It is the essence of an accord that the original duty is not satisfied until the accord is performed, a result that is sometimes suggested by the use of the term "executory accord."

Restatement (Second) of Contracts § 281, comment a.

■ Viewing the Oral Agreement as an executory accord, the Credit Agreement would be superseded only if the defendants fully performed under the Oral Agreement. Because the defendants have breached the express terms of the Oral Agreement, however, the court finds that the Credit Agreement has not been extinguished.

As part of the Oral Agreement, the Miller Defendants assigned and granted to GE Capital a "first lien on and security interest" in two whole life insurance policies with a value of $2 million. *See* Restructuring Agreement, § 6.1(b)(i). In addition, the Miller Defendants warranted that they had good title to all of their personal property, including the insurance policies, and that this property was "subject to no ... claims." *See id.* § 8.10. Finally, the Miller Defendants covenanted that they would not "contract, create, incur, assume or suffer to exist any indebtedness" not contemplated by the Oral Agreement. *See id.* § 10.4. The Restructuring Agreement provides that these warranties were part of the consideration for the Oral Agreement. *See id.* § 8 ("In order to induce GE Capital to enter into this Agreement, the [Defendants] make the ... representations, warranties and agreements").

Notwithstanding these representations, the Miller Defendants admit that they borrowed against the insurance policies which had been assigned to GE Capital. *See* Defendants' Answer and Counterclaim to Plaintiff's Amended Complaint ("Counterclaim"), ¶ 10. Although the defendants claim that they would have repaid the borrowed funds prior to the execution of the Restructuring and Stock Purchase Agreements, the court concludes that the Miller Defendants' actions constituted a breach of the Oral Agreement.

It is well established that a breach of an accord allows the non-breaching party to proceed under either the original obligation or the accord. As the Pennsylvania Superior Court has stated, "where the terms of an accord are breached, the non-defaulting party 'may enforce the accord, or, ... at his option, enforce the underlying (i.e. previous) agreement.'" *Nernberg & Laffey v. Patterson,* 411 Pa.Super. 417, 601 A.2d 1237, 1239 (1991) (quoting *Zager v. Gubernick,* 205 Pa.Super. 168, 208 A.2d 45, 49 (1965)). Therefore, the court concludes that, irrespective of whether GE Capital was given the right to withdraw from the Oral Agreement, GE Capital has the right to proceed against the defendants for their default under the Credit Agreement. Accordingly, the court will grant both GE Capital's motion for summary judgment on its Guaranty claim and motion to dismiss Count One of the defendants' Counterclaim.

### III. Defamation

■ Defendants claim that GE Capital personnel contacted reporters for the *Intelligencer Journal,* and falsely informed them that the Miller Defendants had misappropriated funds which properly belonged to GE Capital. GE Capital has moved to dismiss on the grounds that the defendants' allegations of defamation are insufficiently specific.[10]

---

**10.** GE Capital initially argues that, pursuant to the Guaranties, defendants have waived the right to raise "any and all counterclaims," without regard to either the time when the conduct underlying the counterclaims arose or the subject matter of the counterclaims. The court disagrees.

The Guaranties state that the Miller Defendants have waived all "setoffs, counterclaims and

claims or recoupment against, the Obligations that may at any time be available to the Borrower...." *See* Affidavit of James C. Zollo, Exhibits 5 and 6, ¶ 5. However, the defendants' counterclaims for defamation, tortious interference with contractual relations, and misappropriation of trade secrets do not constitute claims "against" the Credit Agreement. Instead of being based upon the Credit Agreement, these claims rely

Under *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity must apply state substantive common law and federal rules of civil procedure. This rule is applied even where enforcing the federal procedural rule "alters the mode of enforcing state-created rights . . ." *Hanna v. Plumer,* 380 U.S. 460, 473, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965). Therefore, Federal Rule of Civil Procedure 8(a), and not Pennsylvania law, provides the standard of specificity applicable to plaintiff's defamation claim. *See Krochalis v. Insurance Company of North America,* 629 F.Supp. 1360, 1368 (E.D.Pa.1985) (defamation need not be pleaded with particularity). *Accord Linker v. Custom–Bilt Machinery Inc.,* 594 F.Supp. 894, 901 (E.D.Pa.1984); *Karr v. Township of Lower Merion,* 582 F.Supp. 410, 413 (E.D.Pa. 1983).

In the counterclaim, defendants allege that individuals within GE Capital's personnel department contacted Thomas Flannery and Paul Bomberger, reporters at the *Intelligencer Journal,* and told them that "the Miller Defendants had taken money from sales of the notes and mortgages . . . and diverted those funds from GE Capital to the Millers." *See* Counterclaim, ¶ 16–17. In light of the liberal pleading requirements contemplated by Federal Rule of Civil Procedure 8, the court finds these allegations sufficient to state a cause of action for defamation. Not only do these allegations inform GE Capital of the individuals who allegedly received the defamatory statements, but they also apprise GE Capital of the substance of these communications. Finally, the counterclaim puts GE Capital on notice that employees within its personnel department were the individuals who allegedly made the defamatory statements. *See Sabatowski v. Fisher Price Toys,* 763 F.Supp. 705, 714 (W.D.N.Y.1991) (complaint failing to specify the agents of the defendant who defamed plaintiff or the agents who heard the words sufficiently puts

defendant on notice); *Borrell v. Weinstein,* No. CIV.A. 94–2857, 1994 WL 530102, *3 (E.D.Pa. Sept. 26, 1994) (complaint failing to allege which employees defamed plaintiff is sufficient under Federal Rule of Civil Procedure 8).

The defendants, however, have admitted the truth of the alleged defamatory statements upon which they seek relief. Therefore, because the truth of the defamatory statement constitutes an absolute defense to a defamation claim, *Collincini v. Honeywell, Inc.,* 411 Pa.Super. 166, 601 A.2d 292, 296 (1991), the court will grant GE Capital's motion to dismiss defendants' defamation counterclaim.

The defendants attached a copy of the Restructuring and Stock Purchase Agreements to their counterclaim. *See* Counterclaim, Exhibit 1, 2. The Restructuring Agreement provides in pertinent part:

> [Defendants] are in default under the Credit Documents and the Guarantees for, *inter alia,* Borrowers' unauthorized retention of funds intended as payments to [GE Capital] of amounts due on the [Line of Credit] and Borrower's failure to keep, perform and comply with financial covenants set forth in the Credit Agreement.

Restructuring Agreement, Background, ¶ D (emphasis added).

Defendants contend that the court may not consider the Restructuring Agreement when ruling on GE Capital's motion to dismiss. However, Federal Rule of Civil Procedure 10(c) provides that "a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." *Accord ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994); *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir.1990). *See also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327, at 490–491 ("[b]ecause Rule 10(c) provides that the writing becomes a part of the pleading for all purposes, the contents of

---

upon GE Capital's allegedly tortious conduct. The court notes that adopting GE Capital's interpretation of the waiver of claims clause would have the unjust and ridiculous effect of allowing GE Capital to defame defendants, steal their trade secrets, or in any other manner harm the

defendants with impunity. *See, e.g., Marine Midland Bank v. CMR Industries, Inc.,* 159 A.D.2d 94, 559 N.Y.S.2d 892, 898 (N.Y.App.Div.1990) (waiver of counterclaims provision may not be used by a "creditor to shield itself from its own tortious conduct").

any attached writing must be considered in determining the existence of a claim for relief or a defense on a motion to dismiss for insufficiency ...."); *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580, 594 n. 10 (N.D.Ill.1994) ("matter contained in exhibits may be considered in determining whether the plaintiff has pleaded himself or herself out of court"); *Cagan v. Intervest Midwest Real Estate Corporation*, 774 F.Supp. 1089, 1091 n. 2 (N.D.Ill.1991) (exhibits are properly considered part of the pleadings on motion to dismiss). Therefore, the court may properly consider the Restructuring Agreement as part of the defendants' counterclaim.

■ In addition, the court notes that the defendants' chief contention throughout this litigation is that the Restructuring Agreement represents the parties' actual agreement. For instance, in their Counterclaim, the Miller Defendants described the Restructuring Agreement and Stock Purchase Agreement documents as "true and correct cop[ies] of the writings used to evidence the agreements," and specifically incorporated the agreements into their pleadings by reference. *See* Answer, p. 4; Counterclaim, ¶ 8. Therefore, the Miller Defendants cannot now contend that the information contained within the Restructuring Agreement is untruthful. *See Chester County Intermediate Unit*, 896 F.2d at 812 (party offering material attached to a pleading as a "true and correct" copy is bound by the material); *ALA, Inc.*, 29 F.3d at 859 n. 8 (where there is a disparity between an exhibit to the pleading and an allegation in the pleading, the exhibit will control).

The Restructuring Agreement provides that the defendants, without authorization, retained funds owed to GE Capital. This statement, offered by the Miller Defendants, is nearly identical to the alleged defamatory

statement upon which the Miller Defendants base their defamation claim. Therefore, the court will grant GE Capital's motion to dismiss Count Two of the defendants' Counterclaim.[11]

## IV. Tortious Interference with Contractual Relations

■ Defendants contend that GE Capital intentionally failed to execute the Oral Agreement in order to cause Pinnacle to default under its loan with Provident. Defendants have not alleged that GE Capital interfered with Provident's performance of its contract with Pinnacle. Therefore, the court understands defendants to be making a claim under Restatement (Second) of Torts § 766A ("Section 766A"), as opposed to Restatement (Second) of Torts § 766 ("Section 766").

Although Section 766 and Section 766A both involve interference with an existing contract, they have different targets. As the Court of Appeals for the Third Circuit recently stated:

> [S]ection 766 addresses disruptions caused by an act directed not at the plaintiff, but at a third person: the defendant causes the promisor to breach its contract with the plaintiff. Section 766A addresses disruptions caused by an act directed at the plaintiff: the defendant prevents or impedes the plaintiff's own performance.

*Gemini Physical Therapy and Rehabilitation v. State Farm Mutual Automobile Insurance Company*, 40 F.3d 63, 66 (3d Cir. 1994) (quoting *Windsor Securities, Inc. v. Hartford Life Insurance Company*, 986 F.2d 655, 660 (3d Cir.1993)). Section 766A provides:

> One who intentionally and improperly interferes with the performance of a contract ... between another and a third person, by preventing the other from performing

11. The court has been unable to find any other cases where a defamation claim has been dismissed because a party admitted the truth of the defamatory statement in its complaint. *Cf. Shifflet v. Thomson Newspapers (Ohio), Inc.*, 69 Ohio St.2d 179, 188, 431 N.E.2d 1014, 1020 (1982) (summary judgment awarded to defendants where "the truth of the alleged statements ... was established by the express and implicit alle-

gations made by the [plaintiff] in his own pleading"); *Clark v. Maurer*, 824 F.2d 565, 566 (7th Cir.1987) (summary judgment proper where the complaint "appears to concede [the statement's] essential truth"). However, because the court may consider the Restructuring Agreement as part of the Miller Defendants' counterclaim "for all purposes," dismissal of Count Two of defendants' counterclaim is appropriate.

the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

Restatement (Second) of Torts § 766A.

■ In contrast to Section 766, Pennsylvania courts have not adopted Section 766A. *People's Mortgage Company v. Federal National Mortgage Association*, 856 F.Supp. 910, 931 (E.D.Pa.1994) (citing *Windsor Securities, Inc.*, 986 F.2d at 659–60). Therefore, in Pennsylvania, the viability of a Section 766A cause of action remains an open question. *Gemini Physical Therapy and Rehabilitation*, 40 F.3d at 66 ("we are not persuaded that the Pennsylvania Supreme Court would adopt section 766A"); *Fischer & Porter Company v. Moorco International*, 869 F.Supp. 323, 327 (E.D.Pa.1994) ("[n]either the Supreme Court of Pennsylvania nor the Third Circuit has explicitly ruled on whether or not Pennsylvania has adopted [Section 766A]"). The Court of Appeals for the Third Circuit has "express[ed] misgivings with the tort theory found in Section 766A." *Stepanuk v. State Farm Automobile Insurance Company*, No. CIV.A. 92–6095, 1993 WL 114036, *11 (E.D.Pa. April 14, 1993) (discussing *Windsor Securities, Inc.*). *See also People's Mortgage Company*, 856 F.Supp. at 931 (noting Court of Appeals' doubts regarding Section 766A). However, because GE Capital has not questioned the existence of a claim under Section 766A, this court will follow the lead of other courts which have applied Section 766A without deciding whether Pennsylvania will eventually adopt it. *See, e.g., Gemini Physical Therapy and Rehabilitation, Inc.*, 40 F.3d at 66; *Windsor Securities, Inc.*, 986 F.2d at 663; *People's Mortgage Company*, 856 F.Supp. at 931.

■ Assuming the Supreme Court of Pennsylvania would adopt Section 766A, defendants must prove the following elements: (1) a contractual relationship; (2) GE Capital's intent to harm defendants by interfering with contractual relations; (3) the impropriety of the interference; and (4) harm resulting from the conduct. *Windsor Securities, Inc.*, 986 F.2d at 663 (citing *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1388

(3d Cir.1991)). *See also Stepanuk*, 1993 WL 114036 at *11.

There is no question that defendants' allegations satisfy the first, second, and fourth elements of a Section 766A cause of action. Therefore, the issue before the court is whether defendants have alleged that GE Capital's conduct was improper.

■ In deciding whether conduct is improper, Pennsylvania courts are guided by the following factors derived from the Restatement (Second) of Torts § 767 ("Section 767"): (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties. *Windsor Securities, Inc.*, 986 F.2d at 663; *Nathanson*, 926 F.2d at 1388–89 (citing *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175, 1184 (1978), *cert. denied*, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979)). While all of the above factors are relevant, the nature of the alleged conduct is "a chief factor in determining whether the conduct is improper or not." *Windsor Securities, Inc.*, 986 F.2d at 663 (citing Restatement (Second) of Torts § 767, comment c.).

■ Defendants allege that GE Capital breached the Oral Agreement with the intent of causing Pinnacle to default under its loan with Provident. However, under Section 767, "'wrongful' conduct requires something more than a mere breach of contract." *Id.* As the Court of Appeals has noted, "the concept of independently wrongful conduct becomes useless if breach of contract alone constitutes independently wrongful conduct under Section 767." *Id.* at 664. *See also Peoples Mortgage Company*, 856 F.Supp. at 932 ("termination of the contract 'for cause' when there allegedly was none is not the kind of action envisioned as 'improper' under Section 766A"). In addition, this court has held that GE Capital did not breach the Oral Agreement, but merely exercised its with-

drawal rights. *See Elleta Corporation v. Bank of New England*, CIV.A. No. 89–5077, 1990 WL 6101 (E.D.Pa. Jan. 25, 1990) (bank cannot be liable for intentionally forcing lender out of business by merely enforcing contracts). Therefore, defendants' tortious interference claim based upon GE Capital's alleged breach of contract must fail.[12] Accordingly, the court will grant GE Capital's motion to dismiss Count Three of the defendants' Counterclaim.

## V. Misappropriation of Trade Secrets

■■■ In Count Four of their Counterclaim, defendants contend that GE Capital stole trade secrets developed by the Miller Defendants and converted them to its own use.[13] Specifically, defendants claim that GE Capital took defendants' concepts regarding affordable housing financing for women and minorities, including such financing in developing countries.[14]

■■ In order to state a cause of action under Pennsylvania law for misappropriation of trade secrets, defendants must establish the following elements: (1) the existence of a trade secret; (2) communicated in confidence to GE Capital; (3) use of the trade secret by GE Capital in breach of that confidence; and (4) use by GE Capital to the detriment of the defendants. *Kwatkoski v. National Railroad Passenger Corporation*, 1993 WL 185567, *15, 1993 WL 185567 (E.D.Pa.1993) (citing *Reinforced Molding Corporation v. General Electric Company*, 592 F.Supp. 1083, 1087 (E.D.Pa.1984)). In addition, defendants must show that the "trade secret is of value to [them] and is important in the conduct of [their] business, and that [they have] a right to the trade secret by reason of discovery or ownership." *Rohm and Haas Company v. Adco Chemical Company*, 689 F.2d 424, 430 (3d Cir.1982) (citing *Van Products Company v. General Welding & Fabricating Company*, 419 Pa. 248, 213 A.2d 769, 775 (1965)). Although each of the above elements is essential, GE Capital has moved to dismiss the defendants' trade secrets counterclaim solely on the basis that the defendants' allegations fail to establish that

12. Defendants also allege that GE Capital defamed defendants with the intent of causing Pinnacle to default under its loans with Provident. However, confronted with GE Capital's motion to dismiss, defendants have dropped this allegation. *See* Miller Defendants' Sur Reply Brief to GE Capital's Reply to its Motion to Dismiss the Millers' Counterclaim, p. 7. (relying solely on GE Capital's alleged breach of the Oral Agreement and stating that "this allegation is not a business defamation allegation ..."). For this reason, the Miller Defendants' reliance upon *Total Care Systems v. Coons*, 860 F.Supp. 236 (E.D.Pa.1994) is misplaced. *See Id.* (improper conduct alleged where, among other things, claimant has been defamed). In addition, the court notes that the defendants have admitted the truth of the defamatory statements. *See supra*.

13. Count Four of defendants' Counterclaim is ambiguous with regard to what cause of action defendants are asserting. The court commends GE Capital for addressing various intellectual property theories. The defendants, however, have treated count four only as a theft of trade secrets claim. *See* Answer to Motion to Dismiss, p. 19 ("The Defendants' claim in the Fourth Count is limited to the fraudulent taking of the trade secret ..."). Therefore, the court will consider count four as solely stating a claim for the theft of trade secrets.

14. In addition, defendants claim that GE Capital's alleged misappropriation of trade secrets was motivated, in part, by "an intent to discriminate against defendants because Pinnacle was a women-owned enterprise, and because the [financing] concept originated with Defendant Sandra Stevens–Miller." Counterclaim, ¶ 33. Defendants claim that GE Capital's alleged actions constitute a violation "under trade secret law and sex discrimination laws." Answer to Motion to Dismiss, p. 20. However, despite having ample opportunity to do so, defendants have not specified what discrimination-based cause of action they are attempting to assert.

A plaintiff need not allege the exact statutory or constitutional basis for his or her claim. *Continental Casualty*, 884 F.Supp. at 962 (citing *McCalden v. California Library Association*, 955 F.2d 1214, 1223 (9th Cir.), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992)). However, "a pleading must be sufficient enough to enable the court to make out the potential viable legal theories upon which the complaint is based." *Hicks v. Arthur*, 843 F.Supp. 949, 959 (E.D.Pa.1994). At the present time, the court is unable to decipher what, if anything, defendants' claim of discriminatory intent adds to their counterclaim. Accordingly, the court concludes that the defendants have failed to make out a viable sex discrimination claim.

their ideas with regard to affordable housing financing constitute a trade secret.[15]

Pennsylvania courts have adopted the definition of trade secret found in comment b to the Restatement of Torts § 757 (1939), which provides in pertinent part:

A trade secret may consist of any formula, pattern, devise or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.

See *Smith v. BIC Corporation,* 869 F.2d 194, 199 (3d Cir.1989); *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1255 (3d Cir. 1985); *Felmlee v. Lockett,* 466 Pa. 1, 351 A.2d 273, 277 (1976). A "trade secret can be a plan or process, tool or mechanism, compound or element which is known only to its owner ..." *Smith,* 869 F.2d at 199. "Novelty is only required of a trade secret to the extent necessary to show that the alleged secret is not a matter of public knowledge." *SI Handling,* 753 F.2d at 1255 (quoting *Anaconda Company v. Metric Tool & Die Company,* 485 F.Supp. 410, 422 (E.D.Pa.1980)). Consequently, "information that is in the public domain ... cannot be protected as trade secrets." *Smith,* 869 F.2d at 199–200. *See also National Risk Management, Inc. v. Bramwell,* 819 F.Supp. 417, 430 (E.D.Pa. 1993) ("trade secrets must be just that; secrets").

In *Smith* and *SI Handling,* the Court of Appeals articulated various factors which are to be considered when determining whether certain information is worthy of trade secret protection:

(1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Smith,* 869 F.2d at 200; *SI Handling,* 753 F.2d at 1256.

At the present time, the court is unable to determine whether the defendants' concepts with regard to affordable housing financing constitute a trade secret. Although the court agrees with GE Capital that the general idea of affordable financing is not confidential, at this time the court can not decipher whether the defendants have added a nuance worthy of trade secret protection to the provision of such financing. As courts have noted, "there must be some factual predicate for resolving th[e] question" of whether an idea constitutes a trade secret. *FMC Corporation v. Spurlin,* 596 F.Supp. 609, 613 (W.D.Pa.1984) (quoting *Anaconda,* 485 F.Supp. at 414). *See, e.g., In re Arthur Treacher's Franchisee Litigation,* 537 F.Supp. 311, 320 (E.D.Pa. 1982).[16] Accordingly, the court will deny GE

---

**15.** GE Capital initially contends that the Miller Defendants may not proceed with their misappropriation of trade secrets claim because the trade secrets in question belong to Pinnacle, an entity that is now bankrupt. In making this argument, GE Capital relies primarily upon *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), where the Supreme Court held that a copyrighted work created by an employee, as opposed to an independent contractor, belongs to the employer under the "works made for hire" provision of the federal copyright laws. 17 U.S.C. 201(b). *See also MacLean Associates, Inc. v. Wm. M. Mercer–Meidinger–Hansen, Inc.,* 952 F.2d 769 (3d Cir.1991) (construing *Reid* ).

It is unclear whether *Reid*'s "works made for hire" concept applies in trade secret misappropriation cases. *See Computer Associates International v. American Fundware,* 831 F.Supp. 1516,

1524 (D.Colo.1993) ("although status as an employee or an independent contractor is relevant to the ownership of a copyright, it is irrelevant to the ownership of a trade secret"). However, even if *Reid* applies in the trade secret context, the court is unable to determine whether the Miller Defendants were independent contractors or Pinnacle's employees at the time they created the trade secrets. Because of these unresolved issues, the court will not address GE Capital's argument based upon *Reid* at this time. The parties are free to raise this issue at a later point of this litigation if appropriate.

**16.** The court notes that the case relied upon by GE Capital, *Sims v. Mack Truck Corporation,* 488 F.Supp. 592 (E.D.Pa.1980), supports this court's conclusion. In *Sims,* the court awarded judgment to the defendants on a motion for summary judgment only after reviewing the deposition testimony of various witnesses.

Capital's motion to dismiss Count Four of the defendants' Counterclaim.

## VI. Damages

■ The court has ruled that GE Capital is entitled to judgment in its favor on its Guaranty claim. Therefore, the court must now determine what damages GE Capital has suffered. Because there exists a material issue of fact with regard to the measure of damages to which GE Capital is entitled, the court will be unable to reach a specific dollar amount at this time.

In the Restructuring Agreement, the parties allegedly agreed that GE Capital is entitled to recover the following amounts: (1) $8,609,565.54 to cover outstanding principal under the Credit Agreement; (2) $152,530.63 to cover interest and fees through September 30, 1994; and (3) continually accruing interest plus attorney's fees and other costs. *See* Restructuring Agreement, § 2.1. In its brief, however, GE Capital contends that it is entitled to $8,425,713.10 in principal, $645,-966.28 in accrued interest through March 14, 1995, and additional interest in the amount of $3,276.67 for each day since March 14, 1995. *See* Affidavit of James C. Zollo, ¶ 37; Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Immediate Entry of Final Judgment, p. 9. Finally, the court notes that GE Capital's Complaint provides that there is $8,609,565.54 of principal outstanding under the Credit Agreement, and $213,982.19 in accrued interest through October 31, 1994.

The differing allegations, and admissions, with regard to GE Capital's damages preclude this court from awarding a specific amount of damages at this time. The exact measure of GE Capital's damages will be calculated at the time of trial.

## VII. Immediate Entry of Final Judgment

■ GE Capital has moved this court, pursuant to Federal Rule of Civil Procedure 54(b) ("Rule 54(b)"), to immediately enter final judgment on its Guaranty claim. For the reasons stated below, GE Capital's motion will be denied.[17]

■ A determination under Rule 54(b) turns, in part, upon "the relationship between the adjudicated and unadjudicated claims." *Allis–Chalmers Corporation v. Philadelphia Electric Company*, 521 F.2d 360, 364 (3d Cir.1975). Therefore, before engaging in a Rule 54(b) analysis, the court will briefly describe GE Capital's five count complaint.

■ In Count One of its complaint, GE Capital contends that Pinnacle breached the Credit Agreement. As noted above, Count Two alleges that the Miller Defendants breached the Guaranties. Count Three through Five are directed towards all of the defendants. Count Three sounds in conversion, and is based largely upon defendant's retention of money which they received through the sale of the mortgages securing the Credit Agreement. Count Four alleges fraud, and is based upon the defendants' alleged misrepresentations with regard to the number of mortgages held by Pinnacle, as well as the defendants' failure to disclose their receipt of monies for the mortgages they sold. Count Five is a claim for equitable relief whereby GE Capital seeks to freeze the defendants' assets so that an accounting can be undertaken. In each of the first four counts, GE Capital seeks recovery of $8,609,-565.54 of principal and $213,982.19 in accrued interest through October 31, 1994, plus costs and attorney's fees. In addition, in Counts Three and Four, GE Capital seeks to recover punitive damages.[18]

---

17. At Oral Argument, GE Capital informed the court that it may voluntarily dismiss its other causes of action if it prevails on its Guaranty claim. In this event, because defendants' remaining counterclaims are legally separable from the Guaranty Claim, *see infra* note 18, the Court would be willing to certify the Guaranty claim as final under Rule 54(b). The court would then promptly hold a hearing in order to determine the exact amount of GE Capital's damages.

18. The defendants' counterclaims are also relevant to the question of whether a final judgment may be entered in GE Capital's favor. *See Curtiss–Wright Corporation v. General Electric Company*, 446 U.S. 1, 9, 100 S.Ct. 1460, 1465–66, 64 L.Ed.2d 1 (1980) ("counterclaims, whether compulsory or permissive, present no special problems for Rule 54(b) determinations; counterclaims are not to be treated differently from other claims"). However, the court has dis-

■ Rule 54(b) "permits a district court to enter separate final judgment on any claim or counterclaim, after making 'an express determination that there is no just reason for delay.'" *Reiter v. Cooper*, —— U.S. ——, ——, 113 S.Ct. 1213, 1218, 122 L.Ed.2d 604 (1993) (citing *Sears, Roebuck & Company v. Mackey*, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)). The rule "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Allis–Chalmers Corporation*, 521 F.2d at 363. Accordingly, judgments under Rule 54(b) must be "reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims." *Morrison–Knudsen Company v. Archer*, 655 F.2d 962, 965 (9th Cir.1981) (Kennedy, J.). Rule 54(b) provides in pertinent part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Federal Rule of Civil Procedure 54(b). The burden is on the party seeking final certification under Rule 54(b) "to convince the district court that the case is the 'infrequent harsh case' meriting a favorable exercise of discretion." *Anthuis v. Colt Industries Operating Corporation*, 971 F.2d 999, 1003 (3d Cir.1992) (quoting *Allis–Chalmers*, 521 F.2d at 365).[19]

---

missed defendants' breach of contract claim based upon the Oral Agreement. Therefore, because the remaining counterclaims are legally and factually separable from GE Capital's Guaranty Claim, they do not impact the court's Rule 54(b) analysis.

19. In *Curtiss–Wright*, the United States Supreme Court cast doubt upon whether the term "infrequent harsh case" is to be used as a test for those cases worthy of Rule 54(b) certification. 446 U.S. at 10, 100 S.Ct. at 1466 (" 'infrequent harsh

■ Certification under Rule 54(b) requires the court to address two distinct issues. First, the court must

> determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.

*Curtiss–Wright Corporation v. General Electric Company*, 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980). Second, the court must exercise its discretion to determine "whether there is any just reason for delay." *Id.* at 8, 100 S.Ct. at 1465. In making this second determination, the court "must take into account judicial administrative interests as well as the equities involved." *Id.* See *Sussex Drug Products v. Kanasco, Ltd.*, 920 F.2d 1150, 1153 (3d Cir.1990).

The first question which this court must answer is whether the summary judgment entered with regard to Count Two of GE Capital's complaint is "final" for purposes of Rule 54(b). If this court's ruling on Count Two lacks finality, GE Capital's application for Rule 54(b) certification must fail. As the Supreme Court has stated, "[t]he District Court cannot, in the interest of its discretion, treat as final that which is not...." *Mackey*, 351 U.S. at 437, 76 S.Ct. at 900.

■ Finality is defined by 28 U.S.C. § 1291, which generally requires that the litigation on the merits have ended, "leaving nothing for the court to do but exercise the judgment." *Sussex Drug Products*, 920 F.2d at 1153 (quoting *Gulfstream Aerospace Corporation v. Mayacamas Corporations*, 485 U.S. 271, 275, 108 S.Ct. 1133, 1136, 99

---

case' in isolation is neither workable not entirely reliable as a benchmark for appellate review"). *See Federal Savings and Loan Insurance Corporation v. Cribbs*, 918 F.2d 557 (5th Cir.1990) (rejecting use of "infrequent harsh case"). Accordingly, although the Court of Appeals continues to use the term "infrequent harsh case," this court uses it merely "as a description of cases qualifying for Rule 54(b) treatment," and not as a legal benchmark. *Curtiss–Wright*, 446 U.S. at 10, 100 S.Ct. at 1466.

L.Ed.2d 296 (1988)). Rule 54(b) does not change this test of finality, but merely "allows a judgment to be entered if it has the requisite degree of finality as to an individual claim in a multiclaim action." *Id.* Therefore, it is necessary to determine whether Count Two of GE Capital's complaint constitutes a separate "claim" within the meaning of Rule 54(b).

Deciding whether Count Two constitutes a separate claim under Rule 54(b) presents an "onerous problem." *RePass v. Vreeland,* 357 F.2d 801, 805 (3d Cir.1966). As the Court of Appeals for the Third Circuit recently noted, "courts have had difficulty in determining what constitutes a 'claim,' and have recognized that in this endeavor 'uncertainty is the rule.' " *Gerardi v. Pelullo,* 16 F.3d 1363, 1369 (3d Cir.1994). This is because "there is no definitive test to determine whether more than one claim is before the court." *Id.* (citing *Allegheny County Sanitary Authority v. United States Environmental Protection Agency,* 732 F.2d 1167, 1172 (3d Cir.1984)).

GE Capital contends that its Guaranty claim is sufficiently distinguishable from its conversion, fraud, and equitable relief claims for this court to conclude that it is a separate "claim" for Rule 54(b) purposes. The court disagrees.

Under Rule 54(b), "alternative theories of recovery based upon the same factual situation are but a single claim, not multiple ones." *Gerardi,* 16 F.3d at 1369 (quoting *Sussex Drug Products,* 920 F.2d at 1154) Although no formula for determining whether causes of action arise under the "same factual situations" has been established, a review of pertinent case law reveals that courts are reluctant to find that separate causes of action do not constitute a single claim. For instance, in *Schexnaydre v. Travelers Insurance Company,* 527 F.2d 855 (5th Cir.1976), the plaintiff sued the defendant

insurance company after suffering injuries at a construction site. Plaintiff asserted that the defendant's liability rested alternatively on its status as the general contractor's negligence insurance carrier, and on its negligent failure to inspect the construction site. Despite the differing facts relevant to each of the plaintiff's causes of action, the court concluded that the plaintiff had merely asserted a single claim. Accordingly, the court concluded that Rule 54(b) certification of plaintiff's negligent inspection cause of action was in error. *See also Sussex Drug Products,* 920 F.2d at 1154 (" '[d]ifferent facts' and 'distinguishable' law do not alone qualify an alleged claim for separate judgment under Rule 54(b); that Rule may not be invoked in opposition to the 'fundamental rule against splitting a [claim for relief]' ") (quoting *Tolson v. United States,* 732 F.2d 998, 1002 (D.C.Cir.1984)).

The rule forbidding certification of a part of a claim is generally justified on the grounds that it avoids unnecessary appeals. For instance, where the party attempting to appeal a dismissal of a single count may later be awarded relief on one of the unadjudicated counts, an appeal on the dismissed count may turn out to be unnecessary. Accordingly, courts hold that causes of action are not separate claims unless separate recovery is possible on each. *Allegheny County Sanitary Authority,* 732 F.2d at 1172 ("a plaintiff who presents a number of alternative legal theories, but whose recovery is limited to one of them, has only a single claim") (citing *Page v. Preisser,* 585 F.2d 336, 339 (8th Cir.1978)).[20]

■ At first blush, the application of these rules to the present case seems straightforward. GE Capital seeks to recover all outstanding principal, interest and attorney's fees under four different legal theories: breach of the Credit Agreement,

---

**20.** One commentator has summarized the policies underlying Rule 54(b)'s requirement that claims not be split:

> By ... forbidding certification of an order dismissing fewer than all of a party's legal theories based on the same transaction, the courts leave open the possibility that the party will still be awarded relief, an event that would render unnecessary an appellate determination

on the dismissal; this possibility disappears where no alternative theory for relief remains.... In addition to eliminating unnecessary appeals, [this rule] avoids appellate review of the same evidence on more than one appeal.

Note, Appealability in the Federal Courts, 75 Harvard Law Review 351, 360–361 (1961), quoted in *Page,* 585 F.2d at 339.

breach of the Guaranties, fraud, and conversion. Because the recovery sought under each of these theories is identical, the court could easily conclude that the Guaranty claim is part of the same Rule 54(b) claim as Counts One, Three and Four. *See Gerardi*, 16 F.3d at 1370 (court doubts that plaintiff's adjudicated and unadjudicated causes of action constitute separate claims where recovery on the adjudicated cause of action would be "subsumed" by recovery under the unadjudicated theory); *Allegheny County Sanitary Authority*, 732 F.2d at 1172–1173 (where all counts seek identical injunction, they all constitute a single claim for Rule 54(b) purposes).[21] In addition, the court notes that two of GE Capital's causes of action, the suit under the Credit Agreement and the Guaranty claim, involve nearly identical facts. To prove that the Miller Defendants were liable under the Guaranties, GE Capital necessarily had to prove that Pinnacle defaulted under the Credit Agreement.[22]

21. GE Capital's punitive damages allegations in Counts Three and Four do not alter this conclusion. As the Court of Appeals has noted, "when liability rests on the same transaction or series of transactions, a count for punitive damages, although of a different order than compensatory damages, does not constitute a separate claim under Rule 54(b)." *Sussex Drug Products*, 920 F.2d at 1155.

22. GE Capital has failed to consider the effect which its claim against Pinnacle under the Credit Agreement has upon the Rule 54(b) certification of its Guaranty Claim against the Miller Defendants. Instead, GE Capital merely has asserted that its Guaranty Claim is separate from its fraud and conversion causes of action. Apparently, GE Capital has overlooked its suit under the Credit Agreement because that cause of action is aimed only at Pinnacle, an entity now bankrupt. However, despite Pinnacle's bankruptcy, this court must consider GE Capital's suit under the Credit Agreement when determining whether to certify the Guaranty Claim.

In *Robison v. Canterbury Village, Inc.*, 848 F.2d 424 (3d Cir.1988), the district court certified the dismissal of Robison's complaint against one defendant, Reilly, despite the fact that the other defendant, Canterbury, had declared bankruptcy and could not have judgment entered against it. Despite the fact that the Court of Appeals ultimately upheld the Rule 54(b) certification, the Court nevertheless noted:

It might indeed have been preferable had the district court declined to certify the dismissal of the complaint as to Reilly, so that the legal

■ The present dispute is, however, distinguishable from many Rule 54(b) cases. In most cases, the party seeking certification is "attempting to appeal from [a] judgment[ ] dismissing one or more counts...." *Indiana Harbor Belt Railroad Company v. American Cyanamid Company*, 860 F.2d 1441, 1445 (7th Cir.1988). In contrast, GE Capital seeks the entry of final judgment on a count for which judgment was entered in its favor.

As discussed, the purpose of Rule 54(b) is to balance the competing policies of permitting accelerated review of certain judgments with the desire to avoid piecemeal review. Therefore, as the Court of Appeals for the Seventh Circuit has noted:

It can be argued that permitting an immediate appeal from judgments in favor of the plaintiff entitling him or her to the requested relief on one of alternative theories, in contrast to the dismissal of one of these theories, more properly balances the

issues could be addressed with both parties before us.
*Id.* at 426.

The court understands *Robison* to require district courts to consider causes of action brought against bankrupt defendants in the same manner as all other causes of action. For instance, when upholding the certification as to Reilly, the *Robison* Court engaged in a Rule 54(b) analysis and concluded that "the claims as to Reilly are legally separable from those as to Canterbury." *Id.* at 427. Were the Court of Appeals willing to disregard claims brought against bankrupt parties when considering the certification of claims brought against financially viable defendants, such a conclusion would have been unnecessary. Of course, various practical considerations, not present with regard to unadjudicated claims against non-bankrupt parties, may be present when dealing with bankrupt parties. *See id.* (a remand of district court's Rule 54(b) determination "would delay the appeal until the conclusion of the bankruptcy as to Canterbury," and therefore certification "is preferable from the standpoint of judicial economy").

In the present case, Count Two, brought against the Miller Defendants, and Count One, brought against Pinnacle, are not legally separable claims. They seek the exact same relief, and necessarily require proof of the same underlying facts. Both counts require a determination of Pinnacle's liability to GE Capital. The only additional evidence needed to prove Count Two is the Guaranties. Because of this substantial overlap, the court easily concludes that Counts One and Two are part of the same Rule 54(b) claim.

burdens imposed upon appellate courts from multiple appeals with those incurred by the district court when an immediate appeal is unavailable.

*Indiana Harbor*, 860 F.2d at 1445. For instance, in the case at bar, because GE Capital seeks identical recoveries under the first four counts of its Complaint, an affirmance of this court's decision with regard to the Guaranty claim would allow this court to avoid ruling on GE Capital's remaining claims.

Notwithstanding the benefits which would accrue were this court to certify the Guaranty claim, the court will decline to do so. As noted above, the determination of finality under Rule 54(b) is not left to this court's discretion. Rule 54(b) provides for the "entry of a final judgment as to one or more but fewer than all of the claims" without distinguishing between the types of final judgments entered. *Id.* at 1446. Given this language, it is difficult to decipher how GE Capital's Guaranty claim could be a separate claim when a judgment is entered in favor of GE Capital, but merely part of a claim had it been dismissed. Therefore, the court will not alter its analysis based on the fact that GE Capital has been awarded judgment. *See Gerardi*, 16 F.3d at 1368–1370. (engaging in traditional Rule 54(b) finality determination where district court certified judgment in favor of plaintiff).

A final judgment on a claim has yet to be entered in this case. *See id.* (Rule 54(b) certification reversed where plaintiff's successful theory was merely an alternative theory of recovery from an unadjudicated claim). Accordingly, GE Capital's Rule 54(b) motion will be denied.

An appropriate order follows.

### *ORDER*

AND NOW, this 13 day of July, 1995, upon consideration of the various motions before the court, and the responses thereto, it is hereby ORDERED:

1. GE Capital's Motion for Reconsideration is GRANTED;

2. GE Capital's Motion for Summary Judgment on its Guaranty Claim is GRANTED;

3. GE Capital's Motion for an Immediate Entry of a Final Judgment is DENIED;

4. GE Capital's Motion to Dismiss Counts One, Two and Three of the Defendants' Counterclaim is GRANTED;

5. GE Capital's Motion to Dismiss Count Four of the Defendants' Counterclaim is DENIED. However, GE Capital's Motion to Dismiss Count Four is GRANTED with regard to defendants' allegations of sex discrimination.